UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.K., *Petitioner*, v. William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; and Pamela BONDI, Attorney General, U.S. Department of Justice, . *Respondents*. | Case No. **PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner, M.K., is a lawful permanent resident and student at Columbia University. M.K. is married to a U.S. citizen, who is pregnant with their first child and due to give birth next month. On March 8, 2025, agents from the Department of Homeland Security ("DHS") arrested M.K. with no prior notice.

When agents[1] arrested M.K. at his Columbia University student housing, the agents stated that they were detaining him because his student visa had been revoked by the U.S. Department of State. When M.K. showed the officers his immigration documents demonstrating that he is a lawful permanent resident—not a student visa holder—they arrested him anyway,

---

[1] On information and belief, agents from Immigration and Customs Enforcement ("ICE"), a subset of DHS, arrest and detain noncitizens in the community.

1

saying that his green card had also been revoked, but providing no basis for the revocation.

ICE's arrest and detention of M.K. follow the U.S. government's open repression of student activism and political speech, specifically targeting students at Columbia University for criticism of Israel's assault on Gaza. The U.S. government has made clear that they will use immigration enforcement as a tool to suppress that speech.

M.K. has been an outspoken activist regarding these issues. Given that there is no other basis for M.K.'s arrest and detention, it is clear that Respondents are engaging in blatant efforts to target and chill M.K.'s speech and to discriminate against particular viewpoints in contravention to the First Amendment and M.K.'s Due Process Rights. By detaining M.K. without providing a reason and perhaps based on the misunderstanding that he is a student visa holder rather than a lawful permanent resident, ICE's actions violate M.K.'s rights under the First and Fifth Amendments of the U.S. Constitution, the INA, the Administrative Procedures Act, and its own federal regulations. Accordingly, this Court should declare ICE's actions unlawful, enjoin his transfer outside of this District and order his immediate release.

## PARTIES

1. Petitioner M.K. is a student at Columbia University who is married to a U.S. citizen who is 8 months pregnant. On March 8, 2025, Officers from the Department of Homeland Security arrested M.K. in front of his Columbia University housing.

2. Respondent William P. Joyce is named in his official capacity as the Acting Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. Respondent Joyce's address is New York ICE Field Office Director, 26 Federal

Plaza, New York, New York 10278.

3.      Respondent Caleb Vitello is the Acting Director of ICE. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States; routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a custodian of the Petitioner. His address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington, DC 20536-5900.

4.      Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to detain and remove the Petitioner; and as such is a custodian of the Petitioner. Respondent Mayorkas's address is U.S. Department of Homeland Security, Office of the General Counsel, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.

5.      Respondent Pamela Bondi is Attorney General of the United States. In this capacity, she routinely transacts business in the Southern District of New York; is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(g) (2007); and as such is a custodian of the Petitioner. Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530- 0001.

## JURISDICTION & VENUE

6.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2241, Article I, §9, cl. 2 (the Suspension Clause) and Article III of the U.S. Constitution, the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; and 28 U.S.C. § 2201 (Declaratory Judgment).

7.  An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief. *Id.* §§ 2201, 2202. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651.

8.  Venue is proper in the Southern District of New York Under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. At the time this proceeding was initiated, M.K. was detained at 26 Federal Plaza in New York, New York. The petitioner has been and is presently detained at the direction of Mr. Joyce, and a substantial part of the events giving rise to the claims and relevant facts occurred within this district.

## FACTS

*Background*

9.  M.K. is Palestinian, but he grew up in Syria because his grandparents were forcibly removed from their ancestral home in Tiberius, Palestine. Since the war in Syria, his family was again displaced and are now dispersed throughout Europe and West Asia.

10. M.K. entered the United States on a student visa in or around December 2022 in order to pursue a Master's degree in Public Administration from the Columbia University's School of International and Public Affairs ("SIPA"). M.K. completed his program in December 2024, and has an anticipated graduation date of May 2025.

11. M.K. married his U.S. citizen wife on November 16, 2023. He became a lawful permanent resident in 2024. M.Z. and his wife are expecting their first child together next month, April 2025.

*M.K.'s Student Activism and Speech on Matters of Public Concern*

12. As a Palestinian, M.K. has felt compelled to be an outspoken advocate for Palestinian human rights and more recently, to speak out against Israel's genocide in Gaza and the role of Columbia University in financing and in other ways facilitating the genocide. M.K. is

4

committed to being a voice for his People, and calling on the rest of the world to stop providing weapons and support to enable the genocide in contravention with international law.

13. Additionally, M.K. has been a mediator and negotiator, facilitating dialogue between Columbia University's administration and its students. In this role, M.K. has advocated on behalf of his peers to be treated humanely and fairly by the University. This role has placed M.K. in the public eye, particularly through numerous interviews with national media outlets.

14. Speech regarding international law, the obligations that the U.S. and Columbia University have under that law, the human rights of the Palestinian people, and related matters are all topics of public concern clearly protected by the First Amendment.

***M.K.'s Arrest by the Department of Homeland Security***

15. On the evening of March 8, 2025, at approximately 8:30 p.m., M.K. and his wife were returning to their Columbia University-owned apartment from a friend's home. When they arrived at their apartment building, M.K. and his wife were approached by approximately four people who were dressed in plain clothes. All of them entered the lobby of the apartment building.

16. When the people approached M.K. and his wife, they asked, "Are you M.K.?" When M.K. answered in the affirmative, the men identified themselves as being with the Department of Homeland Security ("DHS") and that they have to take M.K. into custody. The agents told M.K.'s wife to go up to her apartment, and that if she would not leave M.K., they threatened to arrest her, too.

17. M.K.'s wife retrieved M.K.'s immigration documents to show the agent that M.K. is a lawful permanent resident. She handed the documents to the agent, who was talking to someone on the phone. The agent looked confused when he saw the documents and said, "He has a green card." M.K.'s wife heard the agent repeat that they were being ordered to bring M.K. in anyways.

18. While M.K.'s wife went to their apartment, M.K. was able to place a call to his attorney, Amy

5

Greer. Attorney Greer advised M.K. to ask if the ICE agent had a warrant, and they advised that they did. Attorney Greer then heard a voice tell M.K. to hand him the phone. Attorney Greer identified herself as M.K.'s attorney and asked who she was speaking with. The agent identified himself as Special Agent Elvin Hernandez of Homeland Security. Attorney Greer asked if Agent Hernandez had a warrant, and he answered in the affirmative, stating that M.K.'s student visa had been revoked by the U.S. Department of State and therefore they were detaining him. Attorney Greer advised Agent Hernandez that M.K. is a lawful permanent resident and has the right to due process. Agent Hernandez responded that the Department of State had revoked M.K.'s green card, too, and that he would be brought in front of an immigration judge. The agent stated that he would be taking M.K. to 26 Federal Plaza.

19. The agents then handcuffed M.K. and brought him outside where there were multiple vehicles waiting. M.K.'s wife asked for the names of the agents, their contact information, and how to reach them to follow up on her husband's detention, but they only advised her that M.K. would be taken to 26 Federal Plaza, and otherwise refused to speak with her. They left her no business card or any information at all as to how to find out where her husband will be taken, on what grounds, or who she can contact.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**RETALIATION, DISCRIMINATION, AND PRIOR RESTRAINT IN VIOLATION OF THE FIRST AND FIFTH AMENDMENTS AND FEDERAL REGULATIONS**

20. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

21. The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I.

6

22. The First Amendment protects past and future speech. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("The first amendment protects speakers from threats of punishment that are designed to discourage future speech."); *Saleh v. City of New York*, No. 06 Civ. 1007(SHS), 2007 WL 4437167, at *3 (S.D.N.Y Dec. 17, 2007) (noting that First Amendment retaliation claims can be brought "alleging punishment for past speech and those complaining of suppression of future speech"). The First Amendment protects "[t]he rights to complain to public officials and to seek administrative and judicial relief." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). The First Amendment applies to actions taken against people in custody, *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004), and those threatened with deportation, *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations omitted*), cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020).

23. Speech on matters of public concern is entitled to the highest level of protection under the First Amendment. *See, e.g., Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991) ("[S]peech critical of the exercise of the State's power lies at the very center of the First Amendment."). Moreover, government action that targets private speech based on the viewpoint taken by the speaker is an egregious form of content discrimination and presumptively unconstitutional. *See Matal v. Tam*, 137 S. Ct. 1744 (2017).

24. "To state a First Amendment retaliation claim, a plaintiff must show that: '(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the 's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury.'" *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations omitted*), cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020).

25. In addition, "the Constitution prevents governmental actors from forbidding, or

penalizing, speech that is protected under the first amendment........Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation." *Fairley*, 578 F.3d at 525. To establish a claim of an unconstitutional "prior restraint" on future testimony, a plaintiff must show (1) that defendants presented "threats of punishment that are designed to discourage" the future testimony, (2) "that [plaintiff's] potential testimony . . . caused the threats," and (3) that the defendants actions caused some injury. *Id.*

26.     M.K.'s past speech pertains to matters of prominent public concern—Israel's war on Gaza and criticism of U.S. institutions that support Israel. These issues have garnered national attention, particularly since the Trump administration has vowed to crack down on student activists.

27.     Respondents have taken adverse actions against M.K. that are motivated by his past and future exercise of First Amendment-protected speech, and have taken action to discourage him from speaking out in the future. By detaining M.K. and holding him in isolation, possibly for removal proceedings, Respondents threaten M.K. with the ultimate punishment for speaking out and discourage M.K. from speaking out in the future.  If ICE eventually deports M.K., Respondents will effectively prevent him speaking at all.

28.     There is a substantial causal connection between M.K.'s protected speech and Respondents' adverse actions and threats. M.K. has been outspoken in his campus activism. There is no other basis that ICE could possibly arrest and detain him other than as retaliation against his protected speech.

29.     M.K. suffers severe and ongoing harm as a result of Respondents' actions, including the unjustified isolation and silencing of his protected speech. He is not able to speak publicly about Israel's continued assault on Gaza, divestment from Israel, Columbia's treatment of student activists, or even how his current unlawful arrest and detention by ICE, which is a current First

Amendment injury. Moreover, even the threat of detention and deportation has a chilling effect on speech. Left undisturbed, Respondents' action in this case would have a devastating effect on vital political speech, allowing a government agency to abuse noncitizens and then detain and maybe even deport the victims of its illegal actions.

30. Respondents' actions against M.K. on the basis of his protected speech does not serve a compelling state interest, and is not narrowly tailored to any legitimate government interest. Respondents' actions operate as a prior restraint that will prevent him from speaking out about government repression of political speech and student activism. Furthermore, he has been deprived of his liberty with no notice and opportunity to be heard on his First Amendment claim prior to his arrest and detention.

31. As a result, this Court should declare that Respondents' retaliatory and discriminatory actions, including the arrest and detention of M.K., violate the First Amendment and the Due Process Clause of the Fifth Amendment; order the release of M.K. under reasonable conditions of supervision; and enter an injunction restraining Respondents from transferring M.K. outside of this Court's jurisdiction, unless Respondents demonstrate that such action is untainted by unlawful First Amendment retaliation and discrimination.

### FIRST CLAIM FOR RELIEF

### RELEASE PENDING ADJUDICATION PURSUANT TO *MAPP v. RENO*

32. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

33. This Court has the "inherent authority" to grant bail to habeas petitioners like M.K. *See Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001) (holding that federal courts have inherent authority to set bail pending the adjudication of a habeas petition when the petition has raised

substantial claims and extraordinary circumstances "make the grant of bail necessary to make the habeas remedy effective").

34. Numerous courts within the Second Circuit have ordered the release of petitioners like M.K. in light of their extraordinary circumstances. *See, e.g.*, *S.N.C. v. Sessions*, No. 18 Civ. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (ordering immediate release of petitioner pending consideration of her claim that her abrupt deportation would violate her due process right to an opportunity to be heard on her application); *Kiaddii v. Sessions*, No. 18 Civ. 1584, at *3 (S.D.N.Y. Mar. 2, 2018) (ECF No. 9) (ordering immediate release when the petitioner presented evidence she may be a U.S. citizen.

35. Here, ICE officers informed M.K. that they were arresting him because his student visa was revoked. Based on this statement, it very well could be that ICE made an error and arrested, detained, and are currently holding M.K. in ICE detention based on a mistake. Release is necessary to make the remedies this civil action and petition seeks effective, in particular because as long as M.K. remains in ICE custody, his ability to speak freely and openly will be chilled. In custody, his speech is severely curtailed and controlled by ICE. He should not remain in ICE custody while pursuing his claims against the agency.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Declare that Respondents' actions to detain M.K. violate the First Amendment and the Due Process Clause of the Fifth Amendment;

3) Enjoin Respondents from transferring the Petitioner from the jurisdiction of this District pending these proceedings;

4) Order the release of Petitioner under reasonable conditions of supervision;

5)	Award Petitioners their costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, FTCA, or other statute; and

6)	Grant such further relief as the Court deems just and proper.

Dated: March 9, 2025                              /s/ Amy E. Greer
New York, NY                                      Amy E. Greer, Esq.
                                                  NY Bar ID: 5910179
                                                  Dratel & Lewis
                                                  29 Broadway, Suite 1412
                                                  New York, NY 10006
                                                  Phone:(212)732-8805
                                                  Fax: (212) 571-3792
                                                  Email: agreer@dratellewis.com

                                                  *Counsel for Petitioner*