**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Mahmoud KHALIL,

       *Petitioner*,

    v.

William P. JOYCE, in his official capacity as
Acting Field Office Director, New York City
Field Office, U.S. Immigration & Customs
Enforcement, *et al*.,

      *Respondents*.

**Case No. 25-cv-1935 (JMF)**

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION
TO COMPEL RESPONDENTS TO RETURN PETITIONER TO THIS DISTRICT**

**ORAL ARGUMENT REQUESTED**

Petitioner, Mahmoud Khalil, brings this motion pursuant to the All Writs Act, 28 U.S.C. § 1691, and the Court's inherent equitable authority for an order returning Petitioner to New York, after Respondents transferred him to Louisiana in spite of a pending habeas corpus petition before this Court and without notice to counsel. The relief sought herein is necessary to preserve the integrity of this Court's jurisdiction over Petitioner's pending habeas corpus petition challenging the very legality of his detention. It is also modest insofar as it does not require the Court to consider the merits of the petition at this time.

## INTRODUCTION

Mahmoud Khalil is a lawful permanent resident of the United States and a student at Columbia University in New York City. Mr. Khalil is married to a U.S. citizen, who is pregnant with their first child and due to give birth next month. On March 8, 2025, agents ostensibly from the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), arrested Mr. Khalil with no apparent basis in law and detained him in Manhattan.

When they arrested Mr. Khalil at his Columbia University student housing, the DHS agents stated that they were detaining him because his student visa had been revoked by the U.S. Department of State. When Mr. Khalil's wife showed the officers documents demonstrating that he is a lawful permanent resident—not a student visa holder—they arrested him anyway, saying, after the fact, that his green card had also been revoked.

The night of his arrest, and while Respondents were holding him in Manhattan, counsel for Mr. Khalil filed a habeas corpus petition challenging the legality of his detention on First Amendment and due process grounds, among others. New York-based counsel also submitted a Form G-28 (notice of representation) to ICE on Mr. Khalil's behalf (said counsel practices in a program that provides immigration representation to individuals detained in Orange County Correctional Facility and Elizabeth County Detention Center).

1

Hours after the petition challenging its detention authority was filed, however, ICE began efforts to transfer Mr. Khalil out of the region and to a Louisiana detention facility a thousand miles away, without providing him any access to his counsel, and without providing counsel of record on his pending habeas petition any advance notice of this transfer or any information with respect to any justification for his detention. This seemingly retaliatory action is particularly troubling given that a central basis for Mr. Khalil's claim for habeas relief is that his very arrest and detention were in retaliation for Mr. Khalil's constitutionally protected advocacy on behalf of Palestinian human rights. Respondents' retaliatory and punitive motives have since been confirmed.[1]

Mr. Khalil therefore moves this Court under the All Writs Act ("AWA") and its inherent authority for an order returning him to the New York City area and restoring the status quo as of the filing of his petition for habeas corpus—a status quo ante Respondents intentionally sought to disrupt by transferring him a thousand miles away after he petitioned this Court for habeas relief. This Court has ample power conferred to it by the All Writs Act and this Court's inherent equitable power to issue an order that reverses ICE's post-habeas transfer of Mr. Khalil so that he may retain access to his family and counsel and so that this Court may proceed unimpeded in the exercise of its jurisdiction over his underlying case challenging the legality of his detention.

---

[1]    The President of the United States, Donald J. Trump, stated on social media that "ICE proudly apprehended and detained Mahmoud Khalil, a Radical Foreign Pro-Hamas Student on the campus of Columbia University." Baseless and inflammatory though it is, this rhetoric at the highest level of government reflects the improper motives animating Respondents' actions towards Petitioner. Moreover, according to Tricia McLaughlin, a DHS spokesperson: "On March 9, 2025, in support of President Trump's executive orders prohibiting anti-Semitism, and in coordination with the Department of State, U.S. Immigration and Customs Enforcement arrested Mahmoud Khalil, a former Columbia University graduate student. Khalil led activities aligned to [sic] Hamas, a designated terrorist organization. ICE and the Department of State are committed to enforcing President Trump's executive orders and to protecting U.S. national security." Though the legality of detention because of speech supporting Palestinian human rights, which Respondents believe is "aligned to Hamas," will ultimately be at issue in Mr. Khalil's habeas petition, it need not be adjudicated in the context of the limited relief sought in this motion. What these statements taken together make immediately clear, however, is that the role of the Court in protecting Petitioner from unlawful detention is paramount.

Mr. Khalil's wife is unable to travel by airplane given the late stage of her pregnancy, and his existing immigration counsel is based in New York. The relief requested does not seek to adjudicate the merits of the underlying habeas petition, and Respondents face no conceivable prejudice from returning him. An order reversing Mr. Khalil's seemingly retaliatory transfer is essential to preserve the integrity of this Court's proceedings, that Respondents intentionally sought to disrupt, as well as his access to counsel and to his family, and it will cause no undue prejudice to Respondents.

## FACTUAL BACKGROUND

### A.    Background

Mahmoud Khalil is Palestinian, but he was born and raised in Syria because his grandparents were forcibly removed from their ancestral home in Tiberias, Palestine.[2] Since the war in Syria, his family was again displaced and are now dispersed throughout Europe and West Asia.

Mr. Khalil entered the United States on a student visa in or around December 2022 in order to pursue a Master's degree in Public Administration from Columbia University's School of International and Public Affairs ("SIPA"). Mr. Khalil completed his program in December 2024, and has an anticipated graduation date of May 2025.

Mr. Khalil married his U.S. citizen wife on November 16, 2023. He became a lawful permanent resident in 2024. Mr. Khalil and his wife are expecting their first child together next month, sometime in April 2025.

---

[2] While Mr. Khalil's habeas corpus petition employed redacted initials instead of his name, the publicity surrounding his ordeal over the past two days, along with public statements by U.S. government officials identifying him, foreclose the possibility of proceeding anonymously.

**B.     Student Activism and Speech on Matters of Public Concern**

As a Palestinian, Mr. Khalil has felt compelled to be an outspoken advocate for the human rights of Palestinians, including on the campus of Columbia University. He is committed to calling on the rest of the world to protect the rights of Palestinians under international law and to stop enabling violence against Palestinians.

Additionally, Mr. Khalil has been a mediator and negotiator, facilitating dialogue between Columbia University's administration and its students. In this role, he has advocated on behalf of his peers to be treated humanely and fairly by the university. This role has placed him in the public eye, particularly through numerous interviews with national media outlets.

Speech regarding international law, the obligations that the United States and Columbia University have under that law, the human rights of the Palestinian people, and related matters are all topics of public concern clearly protected by the First Amendment.

**C.     Unlawful Arrest by the Department of Homeland Security**

On the evening of Saturday, March 8, 2025, at approximately 8:30 p.m., Mr. Khalil and his wife were returning to their Columbia University apartment from a friend's home. When they arrived at their apartment building, Mr. Khalil and his wife were approached by approximately four people who were dressed in plain clothes. All of them entered the lobby of the apartment building, which is owned and operated by Columbia University. *See* Ex. 1, Declaration of Amy Greer ("Greer Decl.") at ¶ 4.

When the people approached Mr. Khalil and his wife, they asked: "Are you Mahmoud Khalil?" When Mr. Khalil answered in the affirmative, the men identified themselves as being with the Department of Homeland Security and stated that they had to take Mr. Khalil into custody. The agents told Mr. Khalil's wife to go up to her apartment, and that if she would not leave Mr. Khalil, they threatened to arrest her, too.

4

Mr. Khalil's wife retrieved his immigration documents to show the DHS agents that Mr. Khalil is a lawful permanent resident. She handed the documents to an agent, who was talking to someone on the phone. The agent looked confused when he saw the documents and said: "He has a green card."  Mr. Khalil's wife heard the agent repeat that they were ordered to bring Mr. Khalil in anyway.

While Mr. Khalil's wife went to their apartment, Mr. Khalil was able to place a call to his attorney, Amy Greer. Greer Decl. at ¶¶ 4-5. Attorney Greer advised Mr. Khalil to ask if the DHS agent had a warrant, and the agent advised that they did. Attorney Greer then heard a voice tell Mr. Khalil to hand over the phone. Attorney Greer identified herself as Mr. Khalil's attorney and asked who she was speaking with. The agent identified himself as Special Agent Elvin Hernandez of Homeland Security Investigations. *Id.* at ¶ 4. Attorney Greer asked if Agent Hernandez had a warrant, and he answered in the affirmative, stating that Mr. Khalil's student visa had been revoked by the U.S. Department of State and therefore they were detaining him. *Id.* Attorney Greer advised Agent Hernandez that Mr. Khalil is a lawful permanent resident and has the right to due process. *Id.* at ¶ 5. Agent Hernandez responded that the Department of State had revoked Mr. Khalil's green card,[3] too, and that he would be brought in front of an immigration judge and hung up the phone. *Id.*

The agents then handcuffed Mr. Khalil and brought him outside where there were multiple vehicles waiting. Mr. Khalil's wife asked for the names of the agents, their contact information, and how to reach them to follow up on her husband's detention, but they only advised her that Mr. Khalil would be taken to 26 Federal Plaza (in Manhattan), and otherwise refused to speak with

---

[3] Counsel is unaware of any provision in law that would allow the Department of State to rescind or revoke lawful permanent resident status granted by U.S. Citizenship & Immigration Services.

5

her. *Id.* at ¶ 6. They left her no business card or any information at all as to how to find out where

her husband was to be taken, on what grounds, or who she can contact. *Id.* at ¶ 7.

### D.       The Habeas Corpus Petition Filed in this Court Challenging the Legality of Detention

Under the law of this Circuit, it would be unconstitutional for Respondents to have imposed

punitive immigration consequences on Mr. Khalil, such as detention and removal, as they appear

to have done, in retaliation for Mr. Khalil's constitutionally protected speech and advocacy. *See*

*Ragbir v. Homan*, 923 F.3d 53, 78 (2d Cir. 2019), cert. granted, judgment vacated on other grounds

sub nom. *Pham v. Ragbir*, 141 S. Ct. 227 (2020). Counsel filed the instant habeas corpus petition

on Mr. Khalil's behalf on March 9, 2025, at 4:41 a.m. ECF No. 1. The urgently-filed petition

challenged his detention as unlawful and sought an order from this Court for his release. The

petition lodged jurisdiction with this Court.[4] On March 9, 2025, at 4:29 a.m., counsel checked the

ICE online detainee locator, which indicated that Mr. Khalil was in New York. *Id.* at ¶ 10. At 8:30

a.m., counsel once again checked the ICE online detainee locator, which indicated that Mr. Khalil

was still in New York. *Id.*

After multiple emails to ICE to attempt to reach Mr. Khalil, at 1:47 p.m., counsel was

informed that Mr. Khalil was in the process of being transferred to a detention facility within the

New Orleans ERO Field Office. *Id.* at ¶ 12. Counsel reached out to the U.S. Attorney's Office for

the Southern District of New York, who confirmed that Mr. Khalil was en route to Louisiana. *Id.*

at ¶ 13. Counsel requested Mr. Khalil's immediate return, but was told that ICE would not consent

to his return absent a court order. When Mr. Khalil's counsel attempted to schedule a telephone

call with Mr. Khalil—a process that typically occurs the same day or the next day here in New

---

[4] Mr. Khalil's habeas corpus petition was filed urgently and counsel plan to amend it in due time. The instant motion is respectfully submitted without prejudice to Mr. Khalil's ability to amend the underlying petition seeking relief from his unlawful detention as needed.

York—authorities in the Louisiana ICE detention facility offered a date ten days away. Counsel access appears significantly inferior to what would be available to Mr. Khalil if he were in this district, which further supports the relief requested herein.

Thus, despite obviously being on notice that Mr. Khalil's habeas petition challenged the legality of Respondents' retaliatory detention of Mr. Khalil, Respondents nevertheless attempted to disrupt the course of this litigation, and of Mr. Khalil's access to his counsel, by sending him into detention a thousand miles away.

## ARGUMENT

### I. THE COURT SHOULD ORDER RESPONDENTS TO RETURN PETITIONER TO THIS DISTRICT SO HE CAN LITIGATE HIS PENDING HABEAS CASE

#### A. The Court Enjoys Broad Authority to Issue an Injunction

The All Writs Act ("AWA") provides federal courts with a powerful tool to preserve the integrity of their jurisdiction to adjudicate claims before them. *See* 28 U.S.C. § 1651(a) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); *TBG v. Bendis*, 36 F.3d 916, 925 (10th Cir. 1994). The Act encompasses a federal court's power to "maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels," *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966), and courts have found that the Act should be broadly construed to "achieve all rational ends of law," *California v. M&P Investments*, 46 F. App'x 876, 878 (9th Cir. 2002) (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)).

Whereas a traditional preliminary injunction requires a party to state a claim and show injury to the moving party, an injunction based on the AWA requires only that a party identify a threat to the integrity of an ongoing or prospective court proceeding, or of a past order or judgment. *Klay*, 376 F.3d at 1097 (a court may enjoin almost any conduct "which, left unchecked, would

have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion"). Thus, to issue an injunction pursuant to the AWA, this Court need not find that there is a likelihood of success on the merits of the underlying claims. *See Arctic Zero, Inc. v. Aspen Hills, Inc.*, No. 17-CV-00459-AJB-JMA, 2018 WL 2018115, at *5 (S.D. Cal. May 1, 2018) (distinguishing AWA injunction from traditional preliminary injunction). Rather, it is sufficient for the Court to find that a party has identified a threat to the integrity of or "natural conclusion" of an ongoing proceeding such as the instant habeas action.

Courts likewise retain comparable, inherent equitable authority to enjoin transfers pending a habeas petition, *see* 28 U.S.C. § 2243 (habeas courts authorized to order relief "as law and justice require"), and courts regularly exercise that authority. *See, e.g.*, Mem. Op. & Order, *Perez Parra v. Catro*, No. 24-cv-912 (D.N.M. Feb. 9, 2025) (granting TRO preventing transfer of detained immigrant to U.S. military base at Guantánamo Bay, Cuba) ("Considering the uncertainty surrounding jurisdiction, the Court determines it is necessary to enjoin the transfer of Petitioners to Guantanamo Bay. At this time, the Court cannot say that without this injunction it would not be jurisdictionally deprived to preside over the original writ of habeas corpus should petitioners be transferred. Thus, an injunction is necessary to achieve the ends of justice entrusted to this Court."); *see also, e.g.*, Order, *Westley v. Harper*, No. 2:25-cv-00229 (E.D. La. Feb. 2, 2025), ECF No. 7; *Santos Garcia v. Wolf*, No. 1:20-cv-821 (LMB/JFA), 2020 WL 4668189 (E.D. Va. Aug. 11, 2020); Order, *Campbell v. U.S. Immigr. & Customs Enf't*, No. 1:20-cv-22999-MGC (S.D. Fl. July 26, 2020), ECF No. 13; Order, *Sillah v. Barr*, No. 19-cv-1747 (S.D.N.Y. Feb. 25, 2019), ECF No. 3; *see also Zepeda Rivas v. Davis*, 504 F. Supp. 3d 1060, 1077 (N.D. Cal. 2020); *Dorce v. Wolf*, No. 20-CV-11306, 2020 WL 7264869 (D. Mass. Dec. 10, 2020).

**B.      The Court Should Order Respondents to Return Petitioner to this District**

Mr. Khalil in no way suggests or concedes that this Court would not continue to have jurisdiction over his pending claims under controlling law. *See Ex parte Endo*, 323 U.S. 283, 306 (1944) (affirming that district court retained jurisdiction over habeas corpus petition despite Petitioner's transfer to different site). Nor, for the purposes of the limited relief sought herein, does the Court need to address that question (or the merits of the underlying habeas petition). Nevertheless, Respondents in this pending action have chosen to attempt to interfere with the jurisdiction of this Court over pending proceedings challenging the very legality of Mr. Khalil's detention, and to undermine Mr. Khalil's ability to access his immigration counsel, his counsel of record in his pending habeas, and his pregnant wife. Respondents' seemingly retaliatory decision to undermine the natural course of these proceedings is all the more troubling given that his habeas petition itself challenged his detention as an unconstitutional form of government retaliation for his constitutionally protected, peaceful advocacy. Notably, the adjudication of the retaliatory immigration detention would be heard in a jurisdiction which has ruled such retaliatory detentions state a viable constitutional claim.  *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019). The Court need not accept such brazen interference with its role in assessing the legality of government action.

This Court has explicitly relied upon the AWA to enjoin proceedings commenced after the Court's assertion of jurisdiction in order to prevent even a risk that a respondent's actions will diminish the Court's capacity to adjudicate claims before it. In *Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995), after the government moved a habeas appellant to the Fifth Circuit, the court of appeals observed that the petitioner "specifically invoked this Court's jurisdiction via an appeal of his habeas petition," and demonstrated "his desire to have this Court review his deportation appeal." Thus, given that the court's jurisdiction "[was] at issue and at risk," the court ordered the

9

petitioner returned to its jurisdiction under the AWA "in order to safeguard the court's appellate jurisdiction" and preserve its ability to hear subsequent appeals by petitioner.

Moreover, just last month, a district court issued an order under the AWA enjoining the government from transferring three immigration detainees to Guantánamo Bay, Cuba, given the potential loss of access to counsel and the mere possibility that the government would question the ongoing jurisdiction of the court. *Perez-Parra v. Castro*, No. 24-cv-00912, Dkt. 47 ("Mem. Op. and Order") (D.N.M. Feb. 9, 2025) (granting injunction under AWA and court's inherent authority as "necessary to achieve the ends of justice entrusted to this Court").

Other courts have done the same. *See Kurnaz v. Bush*, No. 04-cv-1135, 2005 WL 839542, *1–2 (D.D.C. Apr. 12, 2005) (enjoining Defense Department from transferring Guantánamo detainee with pending habeas petition, absent notice, outside jurisdiction of court); *SEC v. Vision Communs.*, 315 U.S. App. D.C. 384, 74 F.3d 287, 291 (D.C. Cir. 1996) (All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (federal courts "may and should take such action as will defeat attempts to wrongfully deprive parties" of their right to sue in federal court) (internal citation omitted); *Lindstrom v. Graber*, 203 F.3d 470, 474–76 (7th Cir. 2000) (All Writs Act permits court to stay extradition pending appeal of habeas corpus petition). At a minimum, the AWA authorizes the Court to ensure that the litigant is not put in a worse legal position by virtue of the transfer. *See Al Otro Lado v. McAleenan*, 423 F. Supp. 3d 848, 874–78 (S.D. Cal. 2019) (enjoining application of Trump administration "transit ban" which would categorically bar consideration of class members' asylum claims who would only be subject to that categorical ban because of the alleged unlawful delays created by the government and subject to adjudication before the court); *N.Y. Tel. Co.*, 434 U.S. at 173 (holding that AWA allows a federal court to "avail itself of all auxiliary writs as aids

in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it").

In seeming retaliation for a habeas corpus challenge to the very legality of an already retaliatory detention, Respondents knowingly and intentionally sought to interfere both with the Court's ability to exercise its jurisdiction over this habeas petition and with Mr. Khalil's ability to access this Court and his counsel, including his immigration counsel. Rather than bring Mr. Khalil before this Court—"that you have the body" as the latin phrase is commonly translated— Respondents have done the exact opposite, transporting him a thousand miles away from the Court hearing his habeas corpus petition. The All Writs Act and the Court's inherent equitable powers provide this Court ample authority to issue the modest relief sought herein: to restore the status quo ante so as to preserve the Court's unfettered ability to exercise its jurisdiction over Mr. Khalil's pending habeas petition, until the litigation completes its natural course. This modest relief is all the more appropriate given the absence of any meaningful and undue prejudice to Respondents. In sum, this Court should not permit the executive to so cavalierly disrupt its ongoing ability to review a case that was properly brought before it.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court issue an order under the All Writs Act and/or the Court's inherent equitable authority to reverse Petitioner's transfer and return him to New York and to the status quo at the commencement of this litigation.

Dated: March 10, 2025                       Respectfully submitted,
New York, NY

                                            CLEAR PROJECT
                                            MAIN STREET LEGAL SERVICES, INC.


                                            _____/s/_____
                                            Ramzi Kassem
                                            Naz Ahmad
                                            Shezza Abboushi Dallal
                                            CUNY School of Law
                                            2 Court Square
                                            Long Island City, NY  11101
                                            (718) 340-4558
                                            ramzi.kassem@law.cuny.edu
                                            naz.ahmad@law.cuny.edu
                                            shezza.dallal@law.cuny.edu


                                            CENTER FOR CONSTITUTIONAL RIGHTS


                                            _____/s/_____
                                            Baher Azmy
                                            Samah Sisay
                                            Diala Shamas
                                            666 Broadway, 7th Floor
                                            New York, NY 10012
                                            (212) 614-6436
                                            bazmy@ccrjustice.org
                                            ssisay@ccrjustice.org
                                            dshamas@ccrjustice.org


                                            DRATEL & LEWIS


                                            _____/s/_____
                                            Amy E. Greer
                                            29 Broadway, Suite 1412
                                            New York, NY 10006
                                            Phone:(212)732-8805
                                            Fax: (212) 571-3792
                                            Email: agreer@dratellewis.com


                                            *Counsel for Petitioner*