P3CDMKC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

M.K.,

                Petitioner,

        v.                      25 CV 01935

WILLIAM P. JOYCE, *in his
official capacity as Acting
Field Office Director of New
York, Immigration and Customs
Enforcement*, et al.,

                Respondent.

                              Conference
------------------------------x

                              New York, N.Y.
                              March 12, 2025
                              11:30 a.m.

Before:

                HON. JESSE M. FURMAN,

                              District Judge

                    APPEARANCES

MAIN STREET LEGAL SERVICES, INC.
      Attorneys for Petitioner
BY:  RAMZI KASSEM
      SHEZZA ABBOUSHI DALLAL

CENTER FOR CONSTITUTIONAL RIGHTS
      Attorneys for Petitioner
BY:  BAHER AZMY
      SAMAH MEGONA SISAY
      DIALA SHAMAS

DRATEL & LEWIS, P.C.
      Attorneys for Petitioner
BY:  JOSHUA LEWIS DRATEL

P3CDMKC

1    APPEARANCES, Continued:

2    DEPARTMENT OF JUSTICE, UNITED STATES ATTORNEY'S OFFICE
          Attorney for Respondents
3    BY:  BRANDON MATTHEW WATERMAN

4    UNITED STATES ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF NEW YORK
          Attorney for Respondents
5    BY:  JEFFREY STUART OESTERICHER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P3CDMKC

| | |
|---|---|
| 1 | THE DEPUTY CLERK:  *M.K. v. Joyce, et al.*, 25 CV 1935. |
| 2 | Counsel, please state your name for the record. |
| 3 | MR. KASSEM:  Good morning, your Honor.  Ramzi Kassem, |
| 4 | Main Street Legal Services, for the petitioner, Mahmoud Khalil. |
| 5 | MR. AZMY:  Baher Azmy, from the Center for |
| 6 | Constitutional Rights, also for petitioner. |
| 7 | MS. SISAY:  Samah Sisay, with the Center for |
| 8 | Constitutional Rights, for the petitioner. |
| 9 | MS. DALLAL:  Shezza Abboushi Dallal, from the CLEAR |
| 10 | Project, Main Street Legal Services, also for the petitioner. |
| 11 | MR. DRATEL:  Good morning, your Honor.  Joshua Dratel, |
| 12 | Dratel & Lewis.  Our associate, Amy Greer, has been handling |
| 13 | this case, but, unfortunately, she apologizes to the Court, had |
| 14 | a prior commitment out of town that she could not change, so |
| 15 | she is not here.  So I'm here, and Ms. Lewis is here as well, |
| 16 | your Honor. |
| 17 | THE COURT:  All right. |
| 18 | MS. SHAMAS:  Diala Shamas, from the Center of |
| 19 | Constitutional Rights, for the petitioner. |
| 20 | THE COURT:  All right.  I think that covers it for |
| 21 | petitioner. |
| 22 | MR. WATERMAN:  Good morning, your Honor.  Assistant |
| 23 | United States Attorney Brandon Waterman on behalf of the |
| 24 | government. |
| 25 | MR. OESTERICHER:  Good morning.  Jeff Oestericher, |

P3CDMKC

1    Assistant United States Attorney, Southern District of New

2    York, for respondents.

3             THE COURT:  All right.  Good morning to everyone.

4             A few housekeeping things at the outset:  Number one,

5    just a reminder, please speak into the microphone.  We do have

6    an overflow courtroom, so I want to ensure that everyone can be

7    heard.

8             Number two, I am aware that there are some heated

9    opinions and views on this case and issues relating to it.  I

10   just want to remind everybody that this is a courtroom, so

11   decorum is required.  I think today is largely going to be

12   procedural and sort of talking about deadlines and the like,

13   but there is to be no outbursts.  If there is, I will have

14   people escorted out of the courtroom.

15            Furthermore, if anyone has a cell phone in this room,

16   please make sure that it is turned off.  If it goes off during

17   this proceeding, I will take it, and you won't necessarily get

18   it back until the end of the proceeding, if then.

19            Number two or three, whatever number we're up to, I

20   did get the parties' joint letter last night.  I want to be

21   clear, I'm not happy it was filed at 6:55 p.m.  My order had

22   directed you to file it at 5:00 p.m.  When I issue an order, I

23   expect it to be complied with in every way, shape, and form --

24   going forward, I'm not going to tolerate if there is

25   noncompliance -- so everybody should understand that there will

P3CDMKC

1    be consequences going forward if it isn't.

2           I did want to raise the question of public access.

3    Under Rule 5.2(c), there is limited public access to the docket

4    in this case, that is to say, "unless the Court orders

5    otherwise," access to the electronic file is limited, with

6    remote access being available only to the parties, and

7    electronic access otherwise available only in the courthouse.

8           Given the public nature of this case from -- note two

9    of the Petitioner's Motion to Compel notes that the case has

10    already received a lot of attention, and the petitioner's

11    identity I think is reasonably well known.  It is obviously of

12    significant public interest.  I wonder if I should, in fact,

13    order that that restriction be lifted, and that the docket be

14    made available to the public without limitation.

15           Any objection from petitioner?

16           MR. KASSEM:  Your Honor, no objection from petitioner.

17           THE COURT:  Respondents?

18           MR. WATERMAN:  No objection from the government.

19           THE COURT:  All right.  So I will take care of that

20    after the proceeding.

21           All right.  Turning to the next steps, your letter --

22    and I should say it was supposed to be a joint letter, but it

23    was signed only by the petitioner's counsel.  I don't know if

24    there's any significance to that, but, in any event, the letter

25    indicates that the government respondents intend to move to

P3CDMKC

dismiss or transfer for improper venue and that they plan to do
so by midnight tonight.  The letter proposes a briefing
schedule where the opposition would be filed by midnight on
Friday and any reply would be filed by midnight on Monday.

I'm fine with that schedule and prepared to adopt it,
except that I'm going to set the deadline for any reply as 5:00
p.m. on Monday, not midnight.  Again, that means that you file
your reply by 5:00 p.m.  If it's filed after 5:00 p.m., at
5:01 p.m., I will strike it, I will disregard it, and may
impose additional sanctions.

Now, I will obviously consider any arguments when they
are fully briefed, which is to say it's premature to do so now,
but I think it would be helpful for me to get a preview of the
arguments that the government anticipates making.  The weight
of authority in this circuit, as I understand it, provides that
jurisdiction in cases like this is determined by the
petitioner's physical location at the time of filing.  It is
not defeated by a transfer of the petitioner to another
district after.  As Judge Sullivan, for example, put it in
*Golding v. Sessions*, 2018 WL 6444400, at page 3, and under the
immediate custodian rule, or what he said might be better
described as the immediate custodian at the time of filing
rule, "the proper respondent is the warden of the facility
where the detainee is held at the time that he files his
request for habeas relief.  Once a petition is filed, the

P3CDMKC

1    government's position to transfer detainee has no effect on

2    jurisdiction, which is retained by the district court that had

3    jurisdiction over the proper respondent at the time of filing;"

4    or, as the Supreme Court put it in *Ex parte Endo*, 323 U.S. 283,

5    307 (1944), and reaffirmed in *Rumsfeld v. Padilla*, 542 U.S.

6    426, 440-441, n.14 (2004), "the objective of habeas relief may

7    be in no way impaired or defeated by the removal of the

8    prisoner from the territorial jurisdiction of the district

9    court."

10            My understanding is that the petition in this case was

11    filed at 4:40 a.m. on Sunday, and it alleges, as does

12    Ms. Greer's declaration in support of the petitioner's motion,

13    that the petitioner was present in this district at that time.

14    So I guess the question I have for you, Mr. Waterman, is,

15    number one, factually, are those allegations accurate; and,

16    two, do you disagree with the law, and can you anticipate -- or

17    can you tell me what you would anticipate your motion would

18    argue?

19            MR. WATERMAN:  Sure.  And with respect to the facts,

20    we will have an ICE declaration that states that the petitioner

21    was actually physically present in New Jersey no later than

22    3:20 a.m. on Sunday morning.  The habeas petition was filed at

23    4:41 a.m. on Sunday morning.  So at the time of filing, the

24    petitioner was, in fact, booked in and housed at the Elizabeth

25    Detention Facility in Newark, New Jersey.  So jurisdiction for

P3CDMKC

1    habeas purposes never vested or this Court never acquired

2    jurisdiction for habeas purposes under the case law, the weight

3    of authority here, *Rumsfeld v. Padilla*, as well as all the

4    majority cases in this district.  The petitioner simply was not

5    present at the time of filing.

6           THE COURT:  But you agree with the law as I

7    articulated it?

8           MR. WATERMAN:  Yes, your Honor.  Your Honor has

9    familiarity with this and has ruled on this issue a number of

10   times.  I think you've accurately set it forth.

11          THE COURT:  All right.  Very good.  Then your position

12   -- where is the petitioner at the moment?

13          MR. WATERMAN:  Yes, your Honor.  Currently, he is

14   located in Louisiana, in Jena, Louisiana.  On Sunday, he was

15   booked into Elizabeth after being processed in New York after

16   his arrest on Saturday evening.  So early morning hours he was

17   booked into Elizabeth Detention Facility in Newark, New Jersey;

18   spent the night there; and on Sunday he was transported to

19   Jena, Louisiana, for detention at the ICE facility over there.

20   He was flown that afternoon, on Sunday, and arrived late in the

21   evening Sunday night, early Monday morning.

22          THE COURT:  Is it your position, would you be moving

23   to transfer the petition to Louisiana given his current

24   custodial location, or it should be transferred to New Jersey

25   in your judgment?

P3CDMKC

1        MR. WATERMAN:  I think we are still considering which

2   the proper venue would be.  For our purposes, it is not the

3   Southern District of New York.  I think there are arguments for

4   either district.  At the time of filing, if jurisdiction would

5   have vested, the District of New Jersey would be the proper

6   forum, but there could be an argument that jurisdiction never

7   vested, because it was not properly filed in the correct habeas

8   court.  So, applying the *Ex parte Endo* rule, jurisdiction never

9   vested, and so if the case is either dismissed or transferred,

10  the only proper venue would be where he's currently detained.

11       At this time, we are simply suggesting that the

12  Southern District of New York is not the proper forum for this,

13  and it must go either to New Jersey or to Louisiana at this

14  time.

15       THE COURT:  All right.  I would I guess tell you that

16  you should, in your motion, anticipate -- or you should address

17  Justice Kennedy's concurrence in the *Rumsfeld v. Padilla* case.

18  He essentially articulated that the question -- there might be

19  an exception to the general rule where, number one, there was

20  some suggestion of bad faith or an effort on the government's

21  part to deprive a court of jurisdiction, or, number two, where

22  there is a constant movement or movement of a prisoner

23  petitioner in a manner that might prevent the petitioner from

24  knowing where to file.

25       So it sounds like -- I'm not suggesting and I'm

P3CDMKC

1    intimating no view whether the facts here would fall into

2    either of those categories or his opinion would otherwise have

3    any bearing here.  I'm just telling you, you might want to

4    address it.

5              MR. WATERMAN:  Yes, your Honor.

6              THE COURT:  All right.  Anything petitioner's counsel

7    wants to say on that front?

8              MR. KASSEM:  Thank you, your Honor.

9              In addition to Justice Kennedy's concurrence in

10   *Padilla*, we of course have not seen the government's papers

11   seeking to transfer venue to -- whether it's in New Jersey or

12   Louisiana.  I guess at this point it's unclear.  As of our

13   conference yesterday, we thought the government's inclination

14   was to transfer to New Jersey, but we'll wait to see.  We

15   obviously haven't examined those papers.  Preliminarily, our

16   intention is to oppose, but of course we'll want to examine the

17   papers first.

18             The only thing I would add, your Honor, is that

19   sibling courts in this district have looked -- in addition to

20   looking to -- in order to determine who is the immediate

21   custodian, in addition to looking to the location at the time

22   of the hearing of the detainee, courts have also looked to

23   identify the field office that was responsible for the

24   petitioner's detention at the time of filing.  So those

25   arguments have gained traction with some courts in this

P3CDMKC

1    district, and we want to look to that as well.

2            We do not have that information at present.  Counsel

3    for the government have provided us the notice to appear, which

4    does not clarify who the response -- who the ICE field

5    office -- which field office was responsible for Mr. Khalil's

6    detention at the time that the habeas petition was filed.

7            THE COURT:  So I guess you ought to be aware that I

8    think I've rejected that argument in the past.  I would point

9    you to a decision in *Singh v. Holder*, and also the transcript

10   in *Suraiva v. Cioppa*, 18 CV 6628.  That's Docket No. 18.  That

11   is to say, I know that at least back then some of my colleagues

12   had deviated from the immediate custodian rule, but I had not

13   taken that view.  Judge Sullivan addresses that in the decision

14   that I cited earlier as well.

15           So maybe there are developments since I've looked at

16   this, but you're not writing on a fresh slate there.

17           MR. KASSEM:  Understood, your Honor.

18           And going back to Justice Kennedy's concurrence, the

19   circumstances of this case are so extraordinary as to set it

20   apart from the garden variety case that comes to this in other

21   courts.  But completely understood, your Honor.

22           THE COURT:  All right.  Let me say that one thing --

23   if you look at the transcript that I just cited, it's a good

24   example of it.  There, the petitioner didn't have a very good

25   argument in opposition to transfer.  I'm not suggesting that

P3CDMKC

1    that is the case here by any stretch, but I sort of encouraged

2    the petitioner to consent to transfer so that there would at

3    least be an immediate hearing on the merits of the petition in

4    that case, and that's what the petitioner did.  So all that is

5    to say, you should keep that in mind as an option that you may

6    have here, but obviously I'll take things as they come and

7    we'll take it one step at a time.

8         All right.  So I will adopt the briefing schedule on

9    the motion to dismiss or transfer that I said, which is to say

10   your proposed schedule, except that the reply is to be filed by

11   5:00 p.m. on Monday.

12        The only other issue raised in your letter is whether

13   to proceed with briefing on petitioner's already-filed motion

14   seeking an order compelling the petitioner's transfer to this

15   -- or transfer back to this district.  To the extent that that

16   motion was based on a concern that I might lose jurisdiction

17   pending a ruling in this matter, it was obviously mooted by my

18   order the other day, which indicated that he was not to be

19   removed from the country pending a resolution of this case.

20   But obviously the motion seeks relief beyond that, so it's not

21   altogether moot.

22        I also want to stress that my order was not a ruling

23   on the merits.  It was merely intended to protect my

24   jurisdiction, and preserve the status quo, and to ensure that I

25   could issue a ruling on the important issues that this case

P3CDMKC

1    raises.  So, all that is to say that the motion is not resolved

2    or moot.

3              I would be inclined, I know that -- I think from your

4    letter that the government believes that I should hold that in

5    abeyance pending its motion, but I would be inclined, given the

6    nature of the case, to proceed with briefing at the same time

7    and, indeed, I would say on the same schedule, since it's the

8    inverse of the government's motion, which would have the

9    government's response due by Friday at midnight and any reply

10   filed by petitioner by Monday at 5:00 p.m.

11             Any objection to that from respondents?

12             MR. WATERMAN:  No, your Honor.  If I understand, our

13   opposition is due Friday, 11:59 p.m.

14             THE COURT:  Yes.

15             MR. WATERMAN:  That's fine.

16             THE COURT:  Petitioner?

17             MR. KASSEM:  No objection, your Honor.  The schedule

18   is appropriate.

19             THE COURT:  All right.  Now, I was a little surprised

20   that the letter said nothing beyond those two subjects, both of

21   which are sort of more procedural in nature, about where the

22   petitioner's to be located and where this matter should be

23   heard.  That is to say, it didn't address anything with respect

24   to when or how to address the merits of the petition or the

25   issue of bail pending a resolution of the petition.  I mean,

P3CDMKC

1    I'm happy to leave those things for later given the preliminary

2    and threshold nature of the arguments that have been raised,

3    but I guess I wanted to float whether we ought to have a

4    discussion about those issues.

5              So, petitioner's counsel?

6              MR. KASSEM:  Your Honor, as the letter notes,

7    petitioner will file an amended petition on Thursday, and,

8    thereafter, anything else that we do thereafter we'll do on an

9    expedited schedule.  We're just internally figuring that out.

10   But we will certainly file the amended habeas petition to flesh

11   out the grave constitutional concerns and other concerns that

12   lie at the heart of this case by the date stated in our letter,

13   if that's acceptable to the Court.

14             THE COURT:  That is acceptable to me.  So, to the

15   extent that you require leave, leave is granted on that

16   schedule.

17             What about you, Mr. Waterman?

18             MR. WATERMAN:  I think, as we noted, that we believe

19   there are threshold issues that need to be resolved first to

20   figure out which court this belongs in.  Obviously, the

21   petitioner can file the amended petition when they so choose.

22   Perhaps it would be a good idea to have the parties confer

23   after the petition is filed and then propose an order for

24   addressing whatever relief they're seeking at that time.

25             THE COURT:  I was going to suggest something along

P3CDMKC

1    those lines, which is to say that, to the extent that either

2    side intends to seek some other form of relief, I think it

3    would make sense in the first instance for you to confer, so

4    that everyone is on the same page as to what you're planning to

5    do, and hopefully reach agreement on a schedule, especially if

6    you think that an expedited schedule is appropriate.  Then, if

7    there's disagreement, you can present it to me.  If there's

8    agreement, then you can present that to me as well.

9            Does that make sense?

10           MR. KASSEM:  Your Honor, to the extent that we're

11   already here -- and we appreciate the urgency with which this

12   Court has treated this matter already, but since we're already

13   here, our inclination would be to proceed as expeditiously as

14   possible.  And I think it would be good to reach an agreement

15   in principle here before the Court with the other side,

16   provided the Court agrees with that direction.

17           THE COURT:  I'm happy to do that.  That's why I raised

18   the merits issue, even though it wasn't in the letter, because

19   it strikes me there was some advantage to talking through what

20   is likely to happen here, but you didn't take the invitation.

21   You just told me you're filing an amended petition.

22           Do you want to tell me something beyond that?

23           MR. KASSEM:  Well, your Honor, we will discuss steps

24   beyond the petition, as your Honor has just directed us to, and

25   as long as the parties and government understand that we will

P3CDMKC

1    propose a compressed schedule for filing any subsequent papers,

2    I think that will streamline the discussions if the Court

3    agrees that that's appropriate here.

4           THE COURT:  I'm not entirely sure what you're

5    suggesting.  Meaning, you will discuss with counsel how you

6    think you should proceed upon the filing of the amended

7    petition, and then tell me what you think --

8           MR. KASSEM:  Exactly, your Honor.

9           THE COURT:  -- or tell me now --

10          MR. KASSEM:  I'm just trying to avoid a scenario where

11   we have to come to this Court because the schedule we propose

12   to the government is deemed too tight and we -- on the

13   petitioner's side, we'd rather avoid bringing that back to the

14   Court.  Since we're here today, if everybody could agree this

15   matter calls for expedition, that would streamline our

16   discussions with the government after we file the amended

17   petition.  That's all I'm trying to say, and I apologize for

18   the confusion.

19          THE COURT:  The government has proposed a fairly

20   expeditious schedule for its motion to transfer and dismiss,

21   which suggests to me that they understand and appreciate the

22   need for expedition here.

23          But, Mr. Waterman?

24          MR. WATERMAN:  Yes, your Honor.  We certainly

25   understand the need, and that's why we flagged the venue issue

P3CDMKC

1   yesterday when we conferred.  And we do think it would be most

2   expeditious to resolve it without briefing, because, in the

3   proper course, it can be heard quicker.

4            Short of that, on the merits, it's hard to agree to a

5   schedule if they're filing an amended petition.  Their current

6   petition is 11 pages long.  If they file an amended petition

7   that's 90 pages long, with five or six different claims, that's

8   very different than responding to the one claim that's in the

9   petition.

10           So it's really difficult to gauge how long and how

11  involved the response would be without seeing the papers and

12  understanding the landscape that we're going to be in.

13           THE COURT:  Understood, and I appreciate that.  But I

14  take it that you would acknowledge there's some need for speed

15  here; is that correct?

16           MR. WATERMAN:  Yes, your Honor.  We fully appreciate

17  that and are happy to confer with petitioner's counsel once

18  they file their papers and whatever motions, and we can jointly

19  propose a schedule to the Court.  If the parties disagree, we

20  could set forth our respective schedules and ask the Court to

21  adopt one or the other.

22           THE COURT:  Great.  So, how about we do this:  Instead

23  of a deadline for filing an amended petition at 11:59 tomorrow,

24  how about we set it for 9:00 p.m. and set a deadline for a

25  joint letter by noon on Friday indicating next steps and then

P3CDMKC

1    proposed schedule.  That will ensure that you have that

2    discussion.  The government acknowledges that there's a need

3    for expeditious resolution here, so there may be disagreement,

4    but at least you have agreement on that front.  But you can

5    have a discussion guided by the actual amended petition rather

6    than something in the abstract.

7              Does that make sense?

8              MR. KASSEM:  Perfectly, your Honor.  Thank you very

9    much.

10             If it's appropriate, we'd like to raise some counsel

11   access issues with the Court while we're here.

12             THE COURT:  All right.  Go ahead.

13             MR. KASSEM:  So, as your Honor knows, you know,

14   Mr. Khalil -- and this is part of the extraordinary nature of

15   this case -- was taken at night as he was returning home with

16   his wife here in New York City.  He was moved a thousand miles

17   away to Louisiana after this habeas petition was filed with

18   this Court.  That, of course, interferes with his ability to

19   prosecute the habeas case.  That raises significant

20   constitutional concerns.

21             As you know, our contention, your Honor, is that

22   Mr. Khalil was identified, targeted, detained, and, you know,

23   being processed for deportation on account of his advocacy for

24   Palestinian rights and other forms of exercise of his First

25   Amendment protected speech and activism.  And, your Honor, the

P3CDMKC

1  fact that he's now in Louisiana interferes with his access to

2  this court and these proceedings, and it interferes with our

3  ability as his habeas counsel to work with him and even to

4  obtain information about where he was at a certain point in

5  time.

6          So the Government's going to file papers tonight with

7  a declaration presumably from an ICE officer saying that our

8  client was in New Jersey at a given point in time.  You know,

9  the best and possibly only source of information independent of

10  the government that we would have access to would be our

11  client.

12          Now, our access to our client is severely limited by

13  the fact that he's in Louisiana.  We sought to obtain a

14  privileged call with the client.  Normally, immigration

15  proceedings, that's the sort of thing we would do overnight if

16  he were here in the New York area.  The call that we obtained

17  was scheduled for the 20th, I believe, so nearly two weeks

18  after we requested it.  So the limits on our access to him, his

19  access to immigration counsel here in New York City, his access

20  of course to his wife, who is a U.S. citizen, eight months'

21  pregnant, expecting their first child next month, all of these

22  are impediments.  And it's hard for us to continue our work the

23  way we would normally without having normal access to our

24  client the way we would have had he been detained at Orange or

25  Elizabeth, which, as you know, your Honor, would have been the

P3CDMKC

1  normal thing to expect if a lawful permanent resident, who has

2  no criminal convictions, for some reason is being detained.

3        THE COURT:  So, what is the request?

4        You have a motion for an order compelling his transfer

5  back to S.D.N.Y., but we have a briefing schedule on that

6  front, so --

7        MR. KASSEM:  And we appreciate that, your Honor.  I

8  think the only additional thing would be, to the extent it's

9  appropriate, for the Court to help us gain a more regular

10  access to our client.  We have literally not been able to

11  confer with our client once since he was taken off the streets

12  of New York City and moved a thousand miles away to Louisiana.

13        THE COURT:  I think Ms. Greer's declaration indicated

14  that she did speak to him once, that his wife spoke to him, and

15  that Ms. Greer herself did, although the call was cut off, if

16  I'm not mistaken.

17        MR. KASSEM:  That is correct, your Honor.  She did

18  speak with him, and you are correct, of course, that the call

19  was cut off.  But that was a non-privileged call, so of course

20  she had to be guarded, because those calls are, as you know,

21  your Honor, recorded and monitored by the government.

22        And so the earliest legal call that we've been able to

23  obtain is March 20th.  At the time we sought to obtain that

24  call and it was scheduled, that was like two weeks away.  And

25  so, again, we have not been able to have an attorney-client

P3CDMKC

1   privileged conversation with this client since he was taken by

2   government agents outside his home at night, and it is

3   interfering with our ability to prosecute his case, and of

4   course his ability to access this court and these proceedings,

5   which ties directly into the Court's exercise of its

6   jurisdiction.

7           THE COURT:  All right.  Mr. Waterman -- I think, to

8   the extent that the issues are purely legal, I think the case

9   for access to the petitioner himself is not especially strong,

10  but to the extent that your motion is based at least in part on

11  factual allegations, namely, where he was and when he was, when

12  he was there, it strikes me that there is some force to that.

13          So, any thoughts or suggestions here?

14          I'd be inclined to order that they be provided access

15  and privileged communication in some form or fashion, but what

16  are your thoughts?

17          MR. WATERMAN:  This is the first we're hearing of any

18  access to counsel issue, so I have not had an opportunity to

19  check with any of the client agencies regarding this.  We're

20  certainly happy to look into it and find out what the issue

21  might be or what the facts are on the ground over there.

22          The petitioner is in removal proceedings in Louisiana.

23  ICE had commenced the proceedings in Louisiana.  So, this isn't

24  a case where he's being processed for deportation.  He's not

25  sitting there for deportation.  He has been served with that

P3CDMKC

1  notice to appear and the charging document, and is placed in

2  removal proceedings in, in my understanding, the Louisiana

3  court down there.

4        But to the extent counsel here is having issues

5  communicating, I'm happy to reach out to folks and see if we

6  can find a workaround on that.

7        THE COURT:  In other circumstances, I would certainly

8  say let's start there and, if you have a problem, petitioner

9  can come back to me.  I think the concern here is the timing.

10 If their amended petition is due by 9:00 p.m. tomorrow, and

11 your motion is being filed tonight, their response is due

12 Friday, that doesn't give a whole lot of time to sort things

13 out informally.  So, I would be inclined to order that he be

14 provided at least one call today and one call tomorrow,

15 privileged call with counsel.  If you find out that that's

16 problematic for some reason, you can seek relief, but I'm

17 inclined to make that the default.

18        MR. WATERMAN:  That's fine, your Honor.

19        THE COURT:  All right.  So I will do that.

20        Is that adequate for your purposes?

21        MR. KASSEM:  Thank you, your Honor.

22        THE COURT:  All right.  Any other issues from

23 petitioner?

24        MR. KASSEM:  No, your Honor.  Thank you.

25        THE COURT:  From respondents?

P3CDMKC

1          MR. WATERMAN:  Nothing, your Honor.  Thank you.

2          THE COURT:  All right.  I will enter an order, just a

3     bottom line order with respect to everything we covered today:

4     Public access, the briefing schedules, access to counsel.

5     Obviously, you know how to find me if you need me.  Again, I

6     would encourage you to confer with one another.  You have to

7     confer with one another, but to the extent that there are other

8     issues that arise beyond those that we've discussed today,

9     certainly keep an open line of communication with your

10    adversaries, but also officers of the court can work with one

11    another, and let's try to make this a little bit easier for me

12    to resolve the important and weighty issues that are presented.

13         With that, we are adjourned.  Thank you very much.

14         (Adjourned)