UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAHMOUD KHALIL,

                Petitioner,

- against -

WILLIAM P. JOYCE, *et al.*,

                Respondents.

No. 25 Civ. 1935 (JMF)

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO
PETITIONER'S MOTION TO COMPEL HIS RETURN TO THIS DISTRICT**

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
Attorney for Respondents
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2695/2743

JEFFREY OESTERICHER
BRANDON M. WATERMAN
Assistant United States Attorneys
   – Of Counsel –

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................1

    A.    Khalil's immigration detention ..............................................................................1

    B.    Access at the Louisiana Detention Facility..................................................................3

    C.    Khalil's habeas action ............................................................................................4

ARGUMENT

    THE COURT SHOULD DENY  PETITIONER'S MOTION TO COMPEL.....................5

        1.    Legal Authority Asserted In Petitioner's Request .....................................10

        2.    No Relief Is Justified Under Either Basis Petitioner Asserts.....................12

    A.    ICE'S DECISION TO DETAIN HIM OUTSIDE OF NEW YORK .....................12

    B.    ACCESS TO COUNSEL AND HIS WIFE.............................................................13

CONCLUSION...............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**:

*Aguilar v. ICE*,
  510 F.3d 1 (1st Cir. 2007) ............................................................................................... 10

*Alvarez v. ICE*,
  818 F.3d 1194 (11th Cir. 2016) .................................................................................... 8, 9

*Arizona v. United States*,
  567 U.S. 387 (2012) ......................................................................................................... 5

*Arostegui v. Holder*,
  368 F. Appx 169 (2d Cir. 2010) ...................................................................................... 9

*Avramenkov v. INS*,
  99 F. Supp. 2d 210 (D. Conn. 2000) ............................................................................... 7

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
  776 F.3d 126 (2d Cir. 2015) .......................................................................................... 11

*Delgado v. Quarantillo*,
  643 F.3d 52 (2d Cir. 2011) ............................................................................................ 10

*Degen v. United States*,
  517 U.S. 820 (1996) ..................................................................................... 11, 12, 13, 14

*Edison C. F. v. Decker*,
  No. 2-cv-15455-SRC, 2021 WL 1997386 (D.N.J. May 19, 2021)(1) ............................. 7

*Gandarillas-Zambrana v. Bd. Immigration Appeals*,
  44 F.3d 1251 (4th Cir. 1995) ........................................................................................... 6

*Jacquet v. Hodgson*,
  No. CIV.A. 03-11568RWZ, 2003 WL 22290360 (D. Mass. Oct. 6, 2003) .................... 7

*Jimenez-Angeles v. Ashcroft*,
  291 F.3d 594 (9th Cir. 2002) ........................................................................................... 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ....................................................................................................... 11

*Nasrallah v. Barr*,
  590 U.S. 573 (2020) ..................................................................................................... 9-10

*Nolasco v. Holder*,
  637 F.3d 159 (2d Cir. 2011) .......................................................................................... 10

*Reno v. American-Arab Anti-Discrimination Committee ("AADC")*,
  525 U.S. 471 (1999) .................................................................................................... 8, 10

*Rios-Berrios v. INS*,
  776 F.2d 859 (9th Cir. 1985) ........................................................................................... 7

*Ruiz v. Mukasey*,
 552 F.3d 269 (2d Cir. 2009) .............................................................................................. 10

*Rumsfeld v. Padilla*,
 542 U.S. 426 (2004) ............................................................................................................ 5

*Sheldon v. Sill*,
 49 U.S. 441 (1850) ............................................................................................................ 11

*Sprint Spectrum L.P. v. Mills*,
 283 F.3d 404 (2d Cir. 2002) .............................................................................................. 10

*United States v. Schurkman*,
 728 F.3d 129 (2d Cir. 2013) .............................................................................................. 10

*Van Dinh v. Reno*,
 197 F.3d 427 (10th Cir. 1999) ................................................................................. 6-7, 7-8

*Wood v. United States*,
 175 F. App'x 419 (2d Cir. 2006) ......................................................................................... 6

*Zheng v. Decker, No. 14-cv-4663*
 (MHD), 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014) ...................................................... 7

**Statutes**:

6 U.S.C. § 251 ............................................................................................................................ 6

6 U.S.C. § 291 ............................................................................................................................ 6

8 U.S.C. § 1103 .......................................................................................................................... 6

8 U.S.C. § 1226 .................................................................................................................. 2, 3, 4

8 U.S.C. § 1227 .......................................................................................................................... 1

8 U.S.C. § 1231 .......................................................................................................................... 6

8 U.S.C. § 1252 ....................................................................................................... 6, 8, 9, 10, 11

28 U.S.C. § 1651 ............................................................................................................... 1, 4, 10

28 U.S.C. § 2241 .................................................................................................................... 4, 5

**Preliminary Statement**

The petitioner brings this motion pursuant to the All Writs Act, 28 U.S.C. § 1651, and "the Court's inherent equitable authority" to obtain an order compelling U.S. Immigration and Customs Enforcement ("ICE") to detain the petitioner at a detention facility in New York instead of in Louisiana. He argues that such relief is necessary because ICE allegedly intentionally sought to interfere with and disrupt the habeas court's jurisdiction and because his detention in Louisiana interferes with his access to counsel and his wife. For the reasons set forth below, the Court should deny the petitioner's motion. In short, the Court lacks jurisdiction to grant the requested relief, and, in any event, the motion fails on the merits.

**BACKGROUND**

**A.    Khalil's immigration detention**

Mahmoud Khalil ("Khalil"), a native of Syria and citizen of Algeria, entered the United States on a student visa in December 2022. *See* Declaration of Acting Field Office Director, New York City Field Office, William P. Joyce ("Joyce Decl.") (ECF No. 48) ¶ 5. He adjusted to lawful permanent resident status in November 2024. *Id.* ¶ 6. On Saturday, March 8, 2025, Special Agents from the U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations ("HSI") Office of the Special Agent in Charge for the New York Area of Responsibility arrested Khalil at 8:35 p.m. in Manhattan, New York, for the purpose of placing him in removal proceedings. *Id.* ¶ 7. HSI transported him to 26 Federal Plaza for processing, where HSI later served Khalil with a Notice to Appear ("NTA"), the charging document used to commence removal proceedings, which charged him as being removable pursuant to 8 U.S.C. § 1227(a)(4)(C)(i), in that the Secretary of State has reasonable grounds to believe that his presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States. *Id.*; *see also* NTA (exhibit to Joyce Decl.). HSI also served

Khalil with a Notice of Custody Determination, notifying Khalil that his detention was governed by 8 U.S.C. § 1226(a) (immigration custody during removal proceedings). *Id.*

ICE's New York Field Office Enforcement and Removal Operations ("ERO New York") made detention arrangements while Khalil was at 26 Federal Plaza. *Id.* ¶ 12. Due to the lack of detention space available to ERO New York, aliens arrested by ICE in that area of responsibility (AOR) are often detained at facilities in other AORs, which is an operational necessity to prevent overcrowding at ICE facilities. *Id.* ¶ 8. Orange County Jail in Goshen, New York, did not have detention space to accommodate Khail, and many ICE detention facilities throughout the Northeastern United States are near or at capacity and engaged in efforts to relocate detained aliens to regions with available bedspace. *Id.* ¶ 9; *see also id.* ¶ 11.[1] On March 8, 2025, at 10:49 p.m., while processing Khalil, ERO New York requested and obtained bedspace for Khalil from the ERO New Orleans Field Office. *Id.* ¶ 12. The travel packet for Khalil was finalized at 3:57 a.m. on March 9, 2025, with a flight scheduled for 2:30 p.m. on March 9. *Id.*

26 Federal Plaza is a Hold Room facility used for detention of individuals awaiting removal, transfer, immigration court hearings, medical treatment, intra-facility movement, or other processing into or out of a facility, and it does not have beds or overnight medical staff. ICE ERO policy number 11087.2 dictates that absent exceptional circumstances, no detainee should be housed in a Hold Room facility for longer than 12 hours. *Id.* ¶ 13. Elizabeth Detention Facility in

---

[1] Notably, between March 8 and March 9, 2025, ERO New York transported sixteen detained aliens, including Khalil, from ERO New York's AOR to the AOR of New Orleans Field Office Enforcement and Removal Operations ("ERO New Orleans"). Joyce Decl. ¶ 10. Most of these transfers were for ongoing detention, while a small number were being staged for removal. *Id.* ERO New Orleans has administrative control over eight different detention facilities, and so that AOR is often able to accommodate transfers when other AORs are not. *Id.*

2

Newark, New Jersey, has comprehensive overnight accommodations for detainees, such as beds and 24-hour medical staff. *Id.* ¶ 14.

In compliance with the above-noted policy, upon completion of initial processing, Khalil departed 26 Federal Plaza at 1:40 a.m. and was transported to Elizabeth Detention Facility in New Jersey, where he was physically present and booked into the detention facility at 2:20 a.m. Eastern Standard Time (3:20 a.m. Eastern Daylight Time) on March 9, 2025. *Id.* Khalil could not be housed at Elizabeth Detention Facility long-term due to a bedbug issue, so he remained there until his flight to Louisiana. *Id.*; *see also id.* ¶ 11. At 11:30 a.m. on March 9, Khalil departed Elizabeth Detention Facility and was brought to the airport to be transported to the Central Louisiana ICE Processing Facility (the "Louisiana Detention Facility") in Jena, Louisiana. *Id.* ¶ 16. Khalil was booked into the Louisiana ICE Detention Facility at 12:33 a.m. Central Time on March 10, 2025, and he remains detained at that facility. *Id.* ¶ 17.

**B.     Access at the Louisiana Detention Facility**

The Louisiana Detention Facility provides robust access to detainees for legal representatives. *See generally* Declaration of Field Office Director, New Orleans Field Office, Mellissa Harper ("Harper Decl."). The facility allows legal representatives to visit their clients in-person, telephonically, and virtually. Harper Decl. ¶¶ 4-6. Detainees have access to telephones and tablets, which can be used to conduct phone or video calls from the housing units, and those calls are generally recorded. *Id.* ¶ 4. Legal representatives may also request tablet communication with detainees that is not recorded, *id.*, and can also utilize the Virtual Attorney Visitation ("VAV"), which allows legal representatives to meet with their clients virtually using video technology in private rooms or booths to ensure confidentiality of communications during remote legal visits. *Id.* ¶ 5. ICE is fully committed to ensuring that Khalil has access to attorney-client privileged calls with his legal representatives while he is detained at the Louisiana ICE Detention

3

Facility—and has successfully done so already, as this court instructed. *Id.* ¶ 10. In addition, immigration court hearings at that facility are conducted virtually via WebEx and in-person, and the facility can make arrangements to produce detainees virtually via WebEx or Microsoft Teams for appearances in federal court. *Id.* ¶¶ 8, 9. The facility also permits detainees to communicate telephonically and virtually with family and friends. *Id.* ¶ 7.

**C.  Khalil's habeas action**

At 4:41 a.m. on March 9, 2025, Khalil's counsel filed the instant habeas petition under 28 U.S.C. § 2241, while Khalil was physically present and detained in New Jersey. Joyce Decl. ¶¶ 14-15; *see also* ECF No. 11 at 6 ("Counsel filed the instant habeas corpus petition on Mr. Khalil's behalf on March 9, 2025, at 4:41 a.m."). Khalil's original petition challenges his current immigration detention as unlawful, and he seeks an order from this Court requiring ICE to immediately release him. Pet. (ECF No. 2).

On March 10, 2025, Khalil filed a "Motion to Compel Respondents to Return Petitioner to this District." Pet'r Mot. (ECF No. 11). He brings that motion "pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent equitable authority," and he seeks an order from the Court compelling ICE to return him from Louisiana to New York. *Id.* at 1. He argues that such relief is necessary because ICE allegedly intentionally sought to interfere with and disrupt the habeas court's jurisdiction and because his detention in Louisiana interferes with his access to counsel and his wife. *Id.* at 2, 7, 9.

On March 12, 2025, the government filed a motion to dismiss the case without prejudice for lack of jurisdiction/venue, or alternatively, to transfer it. (ECF Nos. 30, 31 ("Gov't Mot."), 32). As set forth in the motion, because the petitioner was detained in New Jersey at the time he filed his habeas petition, the Court lacks habeas jurisdiction over this matter and venue is not proper in the Southern District of New York. Gov't Mot.

4

# ARGUMENT

# THE COURT SHOULD DENY PETITIONER'S MOTION TO COMPEL

## I. THE COURT SHOULD DEFER DECISION ON THIS MOTION

The Court should defer decision on this motion until it decides the government's pending motion to dismiss or transfer. The government has raised a threshold issue concerning the proper venue for this action (and this Court's lack of habeas jurisdiction), and therefore a decision on that motion should precede a decision on this motion. *See* Gov't Mot. at 3-9. That is because a habeas petition brought under 28 U.S.C. § 2241 challenging detention must be brought against the immediate custodian and filed in the district in which the petitioner is detained. *See, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). And venue is improper in the Southern District of New York because Khalil was not detained in this district at the time that he filed his habeas petition; rather, Khalil was physically present in and confined at the Elizabeth Detention Facility in New Jersey. Joyce Decl. ¶¶ 14-15; ECF No. 11 at 6. Thus, for all of the reasons set forth in the government's motion to dismiss or transfer, the Court lacks jurisdiction over the habeas petition and the Southern District of New York is not the proper venue for this habeas action. *See* Gov't Mot. at 3-9. Consequently, without jurisdiction over the case, the Court lacks the power to compel ICE to detain the petitioner in New York.

## II. COURTS LACK JURISDICTION OVER ICE'S DECISIONS DETERMINING PLACES OF DETENTION

This Court also lacks jurisdiction over ICE's discretionary decisions concerning where to detain aliens, and thus it lacks authority to issue an injunction compelling ICE to transfer the petitioner from a detention facility in Louisiana to a detention facility in New York.

"A principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona v. United States*, 567 U.S. 387, 396 (2012). Decisions where to detain an alien

5

pending removal proceedings are within the discretion of the Secretary of Homeland Security and therefore may not be reviewed or enjoined by the district courts. *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.").[2] The INA precludes judicial review over such discretionary decisions. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (barring district courts from exercising subject matter jurisdiction over "any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter [8 U.S.C. §§ 1151-1381] to be in the discretion of the Attorney General . . ."). Here, the Executive's authority under § 1231(g) to decide the location of detention for individuals detained pending removal proceedings falls within the scope of the review bar in § 1252(a)(2)(B)(ii). That is because, under § 1231(g), DHS "necessarily has the authority to determine the location of detention of an alien in deportation proceedings," including whether to change that location during the pendency of proceedings. *Gandarillas-Zambrana v. Bd. Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995).

The Executive's broad discretion to determine appropriate places of detention pending removal has repeatedly been recognized as unreviewable by federal courts after careful review of § 1231(g). *See, e.g.*, *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (holding that the Secretary "was not required to detain [Plaintiff] in a particular state" given the Secretary's "statutory discretion" under § 1231(g)); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999)

---

[2] Although the statute and regulations refer to the "Attorney General," these references should, in light of the Homeland Security Act of 2002, be read as references to the Secretary of Homeland Security. *See* Homeland Security Act § 471, 6 U.S.C. § 291 (abolishing the former Immigration and Naturalization Service); *id.* § 441, 6 U.S.C. § 251 (transferring immigration enforcement functions from the Department of Justice to the Department of Homeland Security); 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens . . . .").

6

(holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief"); *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) ("We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide.").

Thus, given the jurisdictional bar at § 1252(a)(2)(B)(ii), a district court may not exercise jurisdiction over ICE's decision to detain an alien in a given facility, and may not order ICE to transfer an alien from one location to another. *See, e.g.*, *Edison C. F. v. Decker*, No. 2-cv-15455-SRC, 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) ("Congress has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings." (citing § 1231(g)(1))); *Salazar v. Dubois*, No. 17-cv-2186 (RLE), 2017 WL4045304, at *1 (S.D.N.Y. Sept. 11, 2017) (concluding that the district court "does not have authority to issue an order to change or keep [an alien] at any particular location"); *Zheng v. Decker*, No. 14-cv-4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (denying petitioner's request that the Court order ICE not to transfer him to another jurisdiction, holding that § 1231(g) transfer authority "is among the [Secretary of Homeland Security's] discretionary powers"); *Jacquet v. Hodgson*, No. CIV.A. 03-11568RWZ, 2003 WL 22290360, at *1 (D. Mass. Oct. 6, 2003) (holding that a court is "without power to prevent transfer of a plaintiff" because the "[Secretary of Homeland Security] shall arrange for appropriate places of detention" under § 1231(g), and "no court shall have jurisdiction" under § 1252(g) "to hear any cause or claim" arising from the discretion granted to the Secretary); *Avramenkov v. INS*, 99 F. Supp. 2d 210, 213 (D. Conn. 2000) (refusing to grant petitioner's request for an injunction to prevent transfer because "Congress has squarely placed the responsibility of determining where aliens are to be detained within the sound discretion of the Attorney General"); *accord Van Dinh*, 197 F.3d at 434

7

("Because the discretionary decision to transfer aliens from one facility to another and the correlative discretionary decision to grant or deny relief from such a transfer is a 'decision . . . under this subchapter.' Judicial review of that decision is expressly barred by § 1252(a)(2)(B)(ii).").

Petitioner's requested relief is also precluded by 8 U.S.C. § 1252(g). The Supreme Court has explicitly held that the Attorney General's "decision to commence proceedings falls squarely within § 1252(g)." *Reno v. American-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471, 487 (1999) (cleaned up); *see also* 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . .against any alien under this chapter"). In reaching this conclusion, the Court noted that the provision had no effect on review of other actions that may be taken before, during, and after removal proceedings—"such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* at 482.

Thus, although *AADC* provides that § 1252(g) does not bar review of other actions before, during, and after removal proceedings, the provision does bar actions and decisions relating to commencement of proceedings, which necessarily includes the method by which they are commenced. *See Alvarez v. ICE*, 818 F.3d 1194, 1202 (11th Cir. 2016) (recognizing that the three actions listed "represent the initiation or prosecution of various stages in the deportation process," and "[a]t each stage the Executive has discretion to abandon the endeavor" for any number of reasons) (citing *AADC*, 525 U.S. at 483). Accordingly, considering that the commencement of proceedings requires DHS to determine whether, when, and where to commence such proceedings,

8

§ 1252(g) bars review of DHS's decision where to initiate removal proceedings. *See, e.g.*, *Alvarez*, 818 F.3d at 1203 ("The challenge to ICE's decision, made by its counsel, Defendant Emery, essentially asks this Court to find that the agency should have chosen a different method of commencing proceedings. The district court was correct to find that § 1252(g) strips us of the power to entertain such a claim."); *Arostegui v. Holder*, 368 F. Appx 169, 171 (2d Cir. 2010) ("Whether and when to commence removal proceedings is within the discretion of DHS, and we do not have jurisdiction to review such decisions, unless petitioner raises constitutional claims or questions of law.") (citing 8 U.S.C. § 1252(g); *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008)); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) to include not only a decision *whether* to commence, but also *when* to commence a proceeding.") (cleaned up) (emphases in the original).

If there were any doubt about this Court's lack of jurisdiction over Khalil's challenges to the commencement of proceedings, the REAL ID Act's amendments to § 1252(b)(9) should dispel them. Those amendments provide that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). Congress thus divested district courts of jurisdiction over such matters and vested review in only the courts of appeals. *Id.*; *see also Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (the REAL ID Act "clarified that final orders of removal may not be reviewed in district courts, even via

9

habeas corpus, and may be reviewed only in the courts of appeals."). These provisions sweep more broadly than § 1252(g). *See AADC*, 525 U.S. at 483.

Indeed, in *Delgado v. Quarantillo*, the Second Circuit held that the REAL ID Act divests district courts of jurisdiction to review both direct and indirect challenges to removal orders. 643 F.3d 52, 55 (2d Cir. 2011). Only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction. *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). "[T]he substance of the relief that a plaintiff is seeking" will dictate. *Delgado*, 643 F.3d at 55. Where the proceedings occur and whether he had proper access to counsel are issues to be decided in a petition for review. *See, e.g.*, *Nolasco v. Holder*, 637 F.3d 159, 163-64 (2d Cir. 2011); *Aguilar v. ICE*, 510 F.3d 1, 13 (1st Cir. 2007). Therefore, Khalil's request for transfer and request for counsel are both "inextricably linked" to his removal proceedings and its conclusion. *Delgado*, 643 F.3d at 55.

### III. PETITIONER'S MOTION FAILS ON THE MERITS

#### 1. Legal Authority Asserted In Petitioner's Request

The petitioner brings this motion to compel ICE to transfer him to a particular detention location (in New York as opposed to Louisiana) under two sources of authority: the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent equitable authority. *See* Pet'r Mot. at 1. Neither authority supports petitioner's request.

"The All Writs Act grants federal courts authority to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013) (quoting 28 U.S.C. § 1651(a)). "The [All] Writs Act is designed to provide a 'source of procedural instruments designed to achieve the rational ends of law.'" *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413 (2d Cir. 2002) (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)). "[T]he remedies

10

permitted under the Act are extraordinary and should not be used simply to avoid the inconvenience of following statutory procedures that govern the particular circumstances." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 130 (2d Cir. 2015) (quotation marks omitted). Notably, the All Writs Act is one of the statutes specifically included in the jurisdictional bar in § 1252(g). *See* 8 U.S.C. § 1252(g) ("[N]otwithstanding any other provision of law (statutory or nonstatutory), *including . . . sections* 1361 and *1651 of such title*, no court shall have jurisdiction . . ." (emphasis added)).

As to the Court's inherent equitable authority, it is undisputed that the jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Sheldon v. Sill*, 49 U.S. 441, 448 (1850) ("Congress, having the power to establish the courts, must define their respective jurisdictions."). Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted); *Sheldon*, 49 U.S. at 449 ("Courts created by statute can have no jurisdiction but such as the statute confers."). And while "[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities," "[i]n many instances the inherent powers of the courts may be controlled or overridden by statute or rule." *Degen v. United States*, 517 U.S. 820, 823 (1996) (citing, *inter alia*, *Carlisle v. United States*, 517 U.S. 416, 426 (1996); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1962)). Moreover, "[p]rinciples of deference counsel restraint in resorting to inherent power, and require its use to be a reasonable response to the problems and needs that provoke it." *Id.* (internal citations omitted). That is, "[a] court's inherent power is limited by the necessity giving rise to its exercise." *Id.* at 829.

## 2. No Relief Is Justified Under Either Basis Petitioner Asserts

To justify the extraordinary relief he seeks in his motion, the petitioner primarily asserts two grounds. One concerns ICE's decision to detain him in Louisiana, and the other concerns his ability to access his counsel and his wife. As discussed below, assuming *arguendo* that the Court has jurisdiction to grant the relief sought, neither basis justifies granting such relief.

### a. ICE's Decision to Detain Him Outside of New York

First, the petitioner argues that the Court should compel ICE to transfer him to a detention facility in New York instead of Louisiana because such relief "is necessary to preserve the integrity of this Court's jurisdiction over [his] pending habeas corpus petition." Pet'r Mot. at 1; *see also id.* at 2, 7, 9 (stating the same basis in slightly different terms). He argues, without support, that ICE "knowingly and intentionally sought to interfere" with "the Court's ability to exercise its jurisdiction over this habeas petition." *Id.* at 9. Indeed, the petitioner's narrative is based on a misinformed characterization of events that fails to account for what actually happened. As set out above, the decision regarding where to detain the petitioner was made *before* any habeas petition was filed in New York, *see supra* at 2 & Joyce Decl. ¶ 12, and therefore any allegation that ICE retaliated against the petitioner for filing a habeas petition, *see id.* Pet'r Mot. at 2 ("seemingly retaliatory transfer"), is simply unsupported by the facts.

Moreover, the petitioner fails to explain how an order directing ICE to transfer his detention to New York would preserve the Court's jurisdiction. Indeed, the Court already *sua sponte* issued an injunction to preserve its jurisdiction pending a ruling on the petition: "To preserve the Court's jurisdiction pending a ruling on the petition, Petitioner shall not be removed from the United States unless and until the Court orders otherwise." Notice of Conference (ECF No. 9) (citing cases relying on the All Writs Act); *see also* Order (ECF No. 29) (noting that the order staying removal remains in effect). That injunction, while ultimately unnecessary because the petitioner does not

12

yet have a final order of removal that would allow ICE to remove him, is the only injunctive relief necessary to ensure that the Court maintains its jurisdiction over the matter (assuming such jurisdiction even exists here, which it does not). Moreover, the petitioner has not articulated how his presence in Louisiana creates a "problem" that requires this Court to "resort[] to inherent power." *Degen*, 517 U.S. at 827. Indeed, as the petitioner acknowledges, in instances (unlike this one) when habeas jurisdiction properly vested in the district court, a subsequent transfer of the petitioner's detention to a different judicial district would *not* impair the habeas court's jurisdiction. *See* Pet'r Mot. at 9 (citing *Ex parte Endo*, 323 U.S. 283, 306 (1944)). In short, the petitioner's detention in another district does not provide a basis for the Court to grant extraordinary relief directing ICE where it can and cannot detain the petitioner pending his removal proceedings.

b.   **Access to Counsel and His Wife**

Second, the petitioner argues that the Court should compel ICE to transfer him to a detention facility in New York instead of Louisiana because his detention in Louisiana impedes access to counsel and his wife. Pet'r Mot. at 2, 3, 7, 9. But neither his access to counsel nor access to his wife aid the Court in the exercise or preservation of its jurisdiction. Nor are they a problem warranting correction through extraordinary remedies.

The petitioner's argument concerning access to counsel hinges on the purported delay in scheduling a privileged phone call at the Louisiana detention facility. *Id.* at 6-7 (stating in motion papers that counsel was "offered a date ten days away"). However, even if petitioner's counsel had an issue on one occasion with scheduling a prompt privileged call, it does not justify the extraordinary relief he seeks here. Indeed, to the extent there was an access to counsel issue, on March 12, the Court directed ICE to ensure that the petitioner's counsel would receive at least two one-hour private telephone calls with him over the course of two days, thus remedying any

13

immediate access to counsel issue. *See* Order (ECF No. 29) ("With the consent of the Government, Petitioner shall be granted at least one privileged attorney-client call (of at least one hour) today and at least one such call (also of at least one hour) tomorrow."). And there is no reason why this sort of limited and targeted relief cannot satisfy any access to counsel issues about which the petitioner may be concerned while he is detained in Louisiana. Moreover, ICE has committed to working with petitioner's counsel to ensure that they are able to schedule timely privileged calls at the Louisiana detention facility. *See* Harper Decl. ¶ 10. Additionally, as set forth above, the Louisiana detention facility allows for robust access to counsel, whether in-person, telephonically, or virtually, *see id.* ¶¶ 4-8; accordingly, his concerns about access to counsel do not support granting the relief he seeks here.

For these reasons, among others, the petitioner's reliance on relief imposed by a court to prevent detention at Guantanamo Bay is inapt. *See* Pet'r Mot. at 10. While the court in that case determined conditions at Guantanamo prevented ample access to counsel, the petitioner is detained at a regular ICE detention facility in Louisiana, which, as set forth above, has adequate accessibility to meet his access to counsel needs, *see supra* 3-4 & Harper Decl. ¶¶ 4-9.

Lastly, the petitioner has failed to articulate a legal basis why his personal circumstances (namely, his access to his wife) provides a justification to issue the extraordinary relief he seeks, whether under the All Writs Act or the Court's inherent equitable authority.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the petitioner's motion to compel.

Dated: March 14, 2025

Respectfully submitted,

YAAKOV M. ROTH  
Acting Assistant Attorney General  
Civil Division

MATTHEW PODOLSKY  
Acting United States Attorney  
Southern District of New York  
*Attorney for Respondents*

By:   */s/ Brandon M. Waterman*  
JEFFREY OESTERICHER  
BRANDON M. WATERMAN  
Assistant United States Attorneys  
86 Chambers Street, 3rd Floor  
New York, New York 10007  
Tel.: (212) 637-2695/2743  
jeffrey.oestericher@usdoj.gov  
brandon.waterman@usdoj.gov