UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAHMOUD KHALIL,

                        Petitioner,

    - against -

WILLIAM P. JOYCE, *et al.*,

                        Respondents.

No. 25 Civ. 1935 (JMF)

---

# RESPONDENTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS OR TO TRANSFER THE CASE

---

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
Attorney for Respondents
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-2695/2743

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JEFFREY OESTERICHER
BRANDON M. WATERMAN
Assistant United States Attorneys
    – Of Counsel –

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..............................................................................................................................1

    A.    Additional context concerning Khalil's immigration detention ..............................1

    B.    Khalil's habeas petition..........................................................................................3

ARGUMENT

    THE COURT SHOULD DISMISS THIS ACTION OR
    ALTERNATIVELY TRANSFER THIS ACTION ............................................................4

    A.    Venue is Improper in this Court..............................................................................4

    B.    The Court Should Either Dismiss or Transfer this Action....................................12

CONCLUSION...............................................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**:

*Arevalo-Guasco v. Dubois*,
    788 F. App'x 25 (2d Cir. 2019) ................................................................................................ 4

*Barros v. Decker*,
    No. 18 Civ. 7493 (PAE), 2018 WL 11473082 (S.D.N.Y. Nov. 30, 2018) ........................... 10

*Bracy v. Gramley*,
    520 U.S. 899 (1997) ............................................................................................................ 10

*Calderon v. Sessions*,
    330 F. Supp. 944 (S.D.N.Y. 2018) ........................................................................................ 9

*Darboe v. Ahrendt*,
    442 F. Supp. 3d 592 (S.D.N.Y. 2020) ................................................................................... 9

*De Ping Wang v. DHS*,
    484 F.3d 615 (2d Cir. 2007) ................................................................................................ 14

*Demore v. Kim*,
    538 U.S. 510 (2003) .............................................................................................................. 9

*Estate of Landers v. Leavitt*,
    545 F.3d 98 (2d Cir. 2009) .................................................................................................... 7

*Golding v. Sessions*,
    No. 18 Civ. 3036 (RJS), 2018 WL 6444400 (S.D.N.Y. Dec. 6, 2018) ................................. 8

*Liriano v. United States*,
    95 F.3d 119 (2d Cir. 1996) .................................................................................................. 15

*Magee v. Clinton*,
    2005 WL 613248 (D.C. Cir. 2005) ..................................................................................... 13

*Nat'l Archives and Records Admin. v. Favish*,
    541 U.S. 157 (2004) ........................................................................................................ 7, 11

*Parker v. Hazelwood*,
    No. 17 Civ. 484 (LM), 2019 WL 4261832 (D.N.H. 2019) ................................................. 14

*Pittman v. Pullen*,
    No. 3:22-cv-01651 (JAM), 2023 WL 6379371 (D. Conn. Sept. 29, 2023) ......................... 14

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004) ...................................................................................................... passim

*Sillah v. Barr*,
    No. 19 Civ. 1747 (VEC), 2019 WL 1219438 .................................................................... 10

*S.N.C. v. Sessions*,
   325 F. Supp. 3d 401 (S.D.N.Y. 2018) .......................................................................................... 10, 13

*Sow v. Whitaker*,
   No. 18 Civ. 11394 (RWL), 2019 WL 2023752 (S.D.N.Y. May 8, 2019) ................................... 7, 8, 10

*Toolasprashad v. Tryon*,
   No. 12 Civ. 734, 2013 WL 1560176 (W.D.N.Y. April 11, 2013) ......................................................... 10

*United States v. Little*,
   392 F.3d 671 (4th Cir. 2004) ........................................................................................................ 13

*United States v. Means*,
   572 F. App'x 793 (11th Cir. 2014) ................................................................................................. 13

*Wahi v. Pittman*,
   No. 24 Civ. 10314 (MAS), 2025 WL 62914 (D.N.J. Jan. 8, 2025) ....................................................... 8

**Statutes**:

8 U.S.C. § 1226 ............................................................................................................................... 9
8 U.S.C. § 1252 ............................................................................................................................... 9
28 U.S.C. § 1404 ...................................................................................................................... 13, 14
28 U.S.C. § 1406 ...................................................................................................................... 13, 14
28 U.S.C. § 1631 ...................................................................................................................... 13, 14
28 U.S.C. § 2241 ............................................................................................................................. 3

**Preliminary Statement**

As discussed in the government's opening brief ("Gov't Br.") (ECF No. 31), venue is not proper in the Southern District of New York for this habeas action because the petitioner was not detained in this district when he filed his habeas petition. Rather, as the petitioner concedes in his opposition (Pet'r Opp.) (ECF No. 50), he was physically present and confined in New Jersey at the time his petition was filed in this Court. That is dispositive under *Padilla*, and nothing in petitioner's opposition overcomes the government's arguments that this is not the proper forum for his habeas action. Thus, the Court should either dismiss the petition or transfer it.

**BACKGROUND**

**A.     Additional context concerning Khalil's immigration detention**

On Saturday, March 8, 2025, Special Agents from the U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations ("HSI") Office of the Special Agent in Charge for the New York Area of Responsibility arrested Khalil at 8:35 p.m. in Manhattan, New York, for the purpose of placing him in removal proceedings. *See* Second Supplemental Declaration of Acting Field Office Director, New York City Field Office, William P. Joyce ("2d Suppl. Joyce Decl.") (filed with this reply) ¶ 7. HSI transported him to 26 Federal Plaza for processing, where HSI later served Khalil with a Notice to Appear ("NTA"), the charging document used to commence removal proceedings, and a Notice of Custody Determination. *Id.*; *see also* NTA (exhibit to 2d Suppl. Joyce Decl.).

ICE's New York Field Office Enforcement and Removal Operations ("ERO New York") made detention arrangements while Khalil was at 26 Federal Plaza. *Id.* ¶ 12. Due to the lack of detention space available to ERO New York, aliens arrested by ICE in that area of responsibility ("AOR") are often detained at facilities in other AORs, which is an operational necessity to prevent overcrowding at ICE facilities. *Id.* ¶ 8. Orange County Jail in Goshen, New York, did not have

detention space to accommodate Khalil, and many ICE detention facilities throughout the Northeastern United States are near or at capacity and engaged in efforts to relocate detained aliens to regions with available bedspace. *Id.* ¶ 9; *see also id.* ¶ 11.[1] On March 8, 2025, at 10:49 p.m., while processing Khalil, ERO New York requested and obtained bedspace for Khalil from the ERO New Orleans Field Office. *Id.* ¶ 12. ERO New York was responsible for locating bed space to detain Khalil and made its decisions to detain him based solely on operational considerations; ERO New York did not receive any directives or instructions pertaining to Khalil's detention. *Id.* ¶¶ 13, 14. The travel packet for Khalil was finalized at 3:57 a.m. on March 9, 2025, with a flight scheduled for 2:35 p.m. on March 9. *Id.* ¶ 12.

26 Federal Plaza is a "Hold Room" facility used for detention of individuals awaiting removal, transfer, immigration court hearings, medical treatment, intra-facility movement, or other processing into or out of a facility, and it does not have beds or overnight medical staff. *Id.* ¶ 15. ICE ERO policy number 11087.2 dictates that absent exceptional circumstances, no detainee should be housed in a Hold Room facility for longer than 12 hours. *Id.* Elizabeth Detention Facility in Newark, New Jersey, has comprehensive overnight accommodations for detainees, such as beds and 24-hour medical staff. *Id.* ¶ 16.

In compliance with the above-noted policy, upon completion of initial processing, Khalil departed 26 Federal Plaza at 1:40 a.m. and was transported to Elizabeth Detention Facility in New Jersey, where he was physically present and booked into the detention facility at 2:20 a.m. Eastern

---

[1] Notably, between March 8 and March 9, 2025, ERO New York transported sixteen detained aliens, including Khalil, from ERO New York's AOR to the AOR of New Orleans Field Office Enforcement and Removal Operations ("ERO New Orleans"). 2d Suppl. Joyce Decl. ¶ 10. Most of these transfers were for ongoing detention, like Khalil, while a small number were being staged for removal. *Id.* ERO New Orleans has administrative control over eight different detention facilities, and so that AOR is often able to accommodate transfers when other AORs are not. *Id.*

Standard Time (3:20 a.m. Eastern Daylight Time) on March 9, 2025. *Id.* Khalil could not be housed at Elizabeth Detention Facility long-term due to a bedbug issue, so he remained there until his flight to Louisiana. *Id.*; *see also id.* ¶ 11. At 11:30 a.m. on March 9, Khalil departed Elizabeth Detention Facility and was brought to the airport to be transported to the Central Louisiana ICE Processing Facility in Jena, Louisiana. *Id.* ¶ 18. Khalil was booked into the Louisiana detention facility at 12:33 a.m. Central Time on March 10, and he remains detained at that facility. *Id.* ¶ 19. ICE has no current plans or intentions to transfer Khalil from ERO New Orleans' AOR during the pendency of his removal proceedings. *Id.* ERO New York is not involved in Khalil's immigration removal proceedings, which are pending before the LaSalle Immigration Court in Jena, Louisiana. *Id.* ¶ 20.

**B.    Khalil's habeas petition**

At 4:41 a.m. on March 9, 2025, Khalil's attorney filed the instant habeas petition under 28 U.S.C. § 2241 in this District, while Khalil was physically present and detained in New Jersey. *See* 2d Suppl. Joyce Decl. ¶¶ 8-9; *see also* ECF No. 11 at 6 ("Counsel filed the instant habeas corpus petition on Mr. Khalil's behalf on March 9, 2025, at 4:41 a.m."). By her account, Khalil's attorney filed the instant habeas petition in this District, because (i) DHS agents had previously told Khalil's wife that he was being sent to 26 Federal Plaza (as he was), and (ii) the public "ICE Online Detainee Locator System" had not yet been updated at that hour to show he had been transferred to New Jersey. Greer Decl. (ECF No. 11-1) ¶¶ 7, 9. Khalil's petition challenges his current immigration detention as unlawful, and he seeks an order from this Court requiring ICE to immediately release him. Pet. (ECF No. 2). Khalil filed an amended petition on March 13, 2025. (ECF No. 38).

3

# ARGUMENT

# THE COURT SHOULD DISMISS THIS ACTION OR ALTERNATIVELY TRANSFER THIS ACTION

### A.    Venue is Improper in this Court

A straightforward application of *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), which this Court and the overwhelming majority of judges in this District have determined apply in the immigration context, leads to the conclusion that the Southern District of New York is not the proper forum for this habeas action. To determine whether a court acquired habeas jurisdiction, "the key is where [the petitioner] was detained when he filed his habeas petition." *Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 26 n.1 (2d Cir. 2019). It is undisputed that the petitioner *was not* detained in this District when he filed his habeas petition—he was detained at the Elizabeth Detention Facility in New Jersey. That should be the end of the inquiry concerning this Court's habeas jurisdiction. *See* Gov't Br. at 3-9. The petitioner does not contest that he was detained in New Jersey when his counsel filed his habeas petition, and instead makes several arguments for why this Court should nonetheless determine that venue is proper in this District. None has merit.

***First***, the petitioner argues that *Padilla*'s district-of-confinement/immediate-custodian rule contains an exception for cases where the government engages in misconduct or manipulation to evade habeas review, and that such exception applies here given the facts of the case. *See* Pet'r Opp. at 7-12. That is wrong at every turn.

As an initial matter, as the government noted in its opening brief, Justice Kennedy's "proposed" exception to the district-of-confinement rule is not the law—and, indeed, petitioner is unable to marshal a single example of it being applied to award relief. *See* Gov't Br. at 8. The majority in *Padilla* was careful to distinguish between "recognized" and "proposed" exceptions to the "default rule" that otherwise applies. *Padilla*, 542 U.S. at 435-36. The Court did not endorse

4

or adopt the latter—outlined in Justice Kennedy's concurrence—because it was not implicated. *Id.* at 441. And for present purposes, that resolves the inquiry. The petitioner is in effect asking this Court to create a *new* exception to *Padilla*—*i.e.*, to carve out a class of claims from the otherwise "default rule" that the Supreme Court commanded. But this Court does not have the power to do that, any more than it has the power to create exceptions or graft limits on any other holding of the Supreme Court. Instead, if the Supreme Court wishes to "recognize[]" a new exception to *Padilla*'s rule, *id.* at 435-36, it is that court's sole prerogative to do so.

In any event, as the government explained in its opening brief, nothing here amounts to the sort of "exceptional" circumstances that would allow "a court to deviate from [the] basic rules" governing habeas. *See* Gov't Br. at 8-9; *Padilla*, 542 U.S. at 453 (Kennedy, J., concurring).

For one, the proposed exception that Justice Kennedy discussed is about a particular sort of wrong: the government engaging in gamesmanship to frustrate the ability of a federal court to exercise habeas review at all (e.g., focusing on gambits so that a detainee's "filing could not catch up," or refusing to ever tell his counsel where someone is being held, so they have no clue where to file). That is not this case. The government has never attempted to deceive the petitioner's counsel about where Khalil is being held, and where a habeas petition (for whatever its other faults) should be filed. Where, as here, the government has disclosed where a petitioner is being held—and where a petition may be promptly filed and heard—it is simply not circumventing habeas review. In that situation, the basic rules governing habeas review apply in full.

More fundamental, once stripped of its charged rhetoric, the petitioner's accusations of misconduct are completely hollow. Rather, as laid out in the declaration of Acting Field Office Director William Joyce, all of the material decisions about Khalil's detention were made *hours* before he filed any habeas petition. The decision for the petitioner to be ultimately detained in

5

Louisiana was made pursuant to neutral operational considerations, and was made no later than 10:49 p.m. on March 8. 2d Suppl. Joyce Decl. ¶¶ 8-9, 11, 13-16 (discussing lack of bed space, among other things). As for housing the petitioner in New Jersey for the night (as opposed to a facility in New York incapable of holding him), that action was completed by 2:20 a.m. Eastern Standard Time (3:20 a.m. Eastern Daylight Time) on Sunday, March 9. *Id.* ¶ 16. And as for flying petitioner to Louisiana on March 9, that was all according to the schedule and reservations made the night before, again before any habeas petition was filed. *Id.* ¶¶ 12, 18. In short, "[r]ather than being designed to play games with forums," ICE's transfer of the petitioner from New Jersey to Louisiana on March 9—one of at least a dozen similar transfers that weekend—was a preplanned and operational decision made before any habeas petition was ever filed. *Padilla*, 542 U.S. at 455 (Kennedy, J., concurring).

The petitioner asserts this was all part of some governmental malfeasance, but that claim is baseless. As for objective actions, the petitioner's only concrete assertion is that ICE's website failed to update in time, so that his attorney could obtain real-time information. But a lag in a governmental website or a miscommunication involving field officers is a far cry from the sort of exceptional misdoing that could justify a departure from otherwise binding habeas rules; all the more so, where the petitioner has a federal forum to file his claim—one that he can avail himself of *right now* should he wish to do so. In truth, unable to identify any objective misdoing, the petitioner is forced to resort exclusively to ascribing bad motives to ICE's actions. But it is well-established in this Circuit that courts will not "ascribe . . . nefarious motives to agency action as a general matter," and such blanket assertions of bad faith are insufficient to overcome the

presumption of regularity.[2] *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2009). And even without that presumption, the government has submitted sworn declarations explaining what happened in this case. Given the presumption of regularity and the reality of what transpired here, the petitioner's *ipse dixit* accusations of bad faith fall far short of establishing that the government attempted to manipulate the petitioner's transfer, let alone anything of the sort that would give way for an extraordinary exception to *Padilla*'s default rule.[3]

**Second**, the petitioner argues that venue is proper in this Court "because Acting [New York City Field Office] Director Joyce was the 'immediate custodian' throughout [the petitioner's] detention on the morning he filed his habeas petition." Pet'r Opp. at 12-16. This argument runs afoul of *Padilla*. The petitioner relies on the legal control test to identify the proper respondent, but his arguments are precisely those that *Padilla* rejected. He asserts that ICE Acting New York City Field Office Director William Joyce is his "immediate custodian" and that he was the "true

---

[2] ICE is presumed to have acted legitimately and in good faith, a presumption that requires clear evidence to overcome it. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2004) ("Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." (quotation marks omitted)).

[3] Indeed, the petitioner seeks to cast the circumstances of this case as unusual, but they are not. As noted, during the same weekend that the petitioner was detained, the New York Field Office arrested and transferred sixteen individuals from New York to Louisiana. *See* 2d Suppl. Joyce Decl. ¶ 10. Additionally, *Sow v. Whitaker*, No. 18 Civ. 11394 (RWL), 2019 WL 2023752 (S.D.N.Y. May 8, 2019), presents similar facts. There, Sow was arrested by ICE on November 30, processed at 26 Federal Plaza, and then detained at Bergen County Jail in New Jersey. On December 4, ICE transported Sow back to 26 Federal Plaza, where he spent most of the day. His counsel contacted ICE upon learning that he had been moved from the New Jersey jail, and the deportation officer informed counsel that Sow was currently at 26 Federal Plaza, but he did not inform counsel that Sow would be transported to Louisiana later that day. Sow's counsel filed a habeas petition in this District the next day, before learning that ICE had already transferred Sow to Louisiana. *Id.* at *1-2. Sow argued that Justice Kennedy's proposed exception applied in that case, but the court disagreed, explaining, among other things, that the government did not refuse to tell Sow's counsel where he had been taken (his counsel was told three days later). *Id.* at *5-6. This case follows *a fortiori* from *Sow*, where petitioner's counsel was informed about his location several days from when he was transferred there.

7

custodian" who "took and never relinquished custody over [the petitioner] until he stepped off the plane in Alexandria, Louisiana." *Id.* 12, 14, 16. The petitioner misapprehends the law. Under *Padilla*, this "legal reality of control" standard does not determine the proper respondent in a petition that challenges or seeks release from physical confinement.[4] *Padilla* makes clear that the warden of the detention facility, who has physical control over the habeas petitioner, is in fact the official who has the ability to "produce" the petitioner "that he may be released" pursuant to a writ of habeas corpus. *Padilla*, 542 U.S. at 435; *accord Thomas v. Decker*, No. 19 Civ. 8690 (JMF), ECF No. 26 at 18:7-11 (S.D.N.Y. Oct. 16, 2019) ("In my view, the arguments made to the contrary in petitioner's briefs and the Amicus brief ultimately rely on a version of the legal reality of control theory that the *Padilla* court rejected in ambiguous terms."); *Golding v. Sessions*, No. 18 Civ. 3036 (RJS), 2018 WL 6444400, at *3 (S.D.N.Y. Dec. 6, 2018) ("As the Supreme Court recognized in *Padilla*, a detainee's immediate custodian is the person who 'exercises day-to-day control' over his or her 'physical custody,' not the person who ordered such custody.").[5] Lastly, naming the right custodian is necessary, but not sufficient to establish habeas jurisdiction—a habeas petitioner still must satisfy the district of confinement rule, *see Padilla*, 542 U.S. at 442-43, which the petitioner's alternative argument does not even attempt to satisfy.

---

[4] Indeed, by reaffirming the "immediate custodian" rule, the Supreme Court rejected the "legal reality of control" standard that the petitioner appears to urge the Court to follow here. *Padilla*, 542 U.S. at 437-39. In unambiguous terms, the Supreme Court explained that, "[i]n challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Id.* at 439; *see also id.* at 435 ("[T]he proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").

[5] Notably, Yolanda Pittman is the Warden of Elizabeth Detention Center. *See* https://www.corecivic.com/facilities/elizabeth-detention-center; *see also Wahi v. Pittman*, No. 24 Civ. 10314 (MAS), 2025 WL 62914 (D.N.J. Jan. 8, 2025) (§ 2241 immigration petition naming Yolanda Pittman as respondent for detainee held at Elizabeth Detention Center).

***Third***, the petitioner argues that venue is proper in this Court because he amended his habeas petition to include "non-core" claims, which supposedly "predominate" his case and allegedly allow the Court to exercise jurisdiction over the entire case. Pet'r Opp. at 16-17. He is incorrect. As an initial matter, all of the petitioner's claims, at bottom, present a challenge to his detention.[6] Thus, all of the claims should be directed to the proper court (which, as discussed above, is not the Southern District of New York). *See supra* at 4; *see also* Gov't Br. at 3-9.

But even if some of the new claims in the amended petition are considered "non-core" claims, the petitioner's argument that the entire case can be heard here is still without merit.[7] *Padilla* provides no exception to the default rule for "core" claims when a habeas petitioner files a "mixed" habeas petition. Indeed, the petitioner relies on one outlier district court case, *Calderon v. Sessions*, 330 F. Supp. 944, 952 (S.D.N.Y. 2018), in which the district court incorrectly determined that *Padilla*'s rule for "core" habeas challenges could be disregarded when a petitioner files a "mixed" petition. Pet'r Opp. at 17. That position is unsupported by the law and should not be followed. Judge Caproni criticized that holding, explaining that "[b]y applying the legal control test to the petition as a whole, *Calderon* appears to have run afoul of *Padilla*'s first rule: that the immediate custodian rule must govern 'core' claims challenging present physical detention."

---

[6] In his amended petition, the petitioner asserts claims that would enjoin or terminate his removal proceedings—claims over which federal district courts lack jurisdiction under various provisions of 8 U.S.C. § 1252—which, if granted, would in turn also provide a basis for his release from detention. This is because absent the pendency of removal proceedings, the petitioner cannot be detained. *See* 8 U.S.C. § 1226(a) (authorizing detention pending removal proceedings); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[D]etention during deportation proceedings [is] a constitutionally valid aspect of the deportation process."). Thus, all of the petitioner's claims, while presenting different legal theories, at bottom, present a challenge to his "present physical confinement." *Padilla*, 542 U.S. at 435; *see also Darboe v. Ahrendt*, 442 F. Supp. 3d 592, 594-95 (S.D.N.Y. 2020) ("[B]ecause [petitioner's] challenge goes directly to his continued detention, the Court finds that [petitioner] raises a 'core' habeas challenge.").

[7] If the amended petition presents "non-core" claims, it is unclear how those claims can proceed in a habeas petition, as they must involve some sort of custody.

9

*S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 409 (S.D.N.Y. 2018). Instead, "[w]here a habeas petition presents a mix of claims, . . . the petition must be transferred to 'the district that has both (a) territorial jurisdiction over the immediate custodian and (b) venue and personal jurisdiction over the legal custodian." *Barros v. Decker*, No. 18 Civ. 7493 (PAE), 2018 WL 11473082, at * 1 (S.D.N.Y. Nov. 30, 2018) (quoting *S.N.C.*, 325 F. Supp. 3d at 409); *see also Sow*, 2019 WL 2023752, at *4-5 (Lehrburger, J.) ("The reasoning in *S.N.C.* is sound[.]"). Applying this rule, a mixed habeas petition must be brought in the district of confinement, though the petitioner is generally free to bifurcate his claims such that "core" claims are sent to the district of confinement, and "non-core" claims may be brought in a proper court (where there is both venue and personal jurisdiction over the legal custodian for such claims). *See, e.g.*, *Sow* 2019 WL 2023752, at *4-5; *Sillah v. Barr*, No. 19 Civ. 1747 (VEC), 2019 WL 1219438, at *2; *Barros*, 2018 WL 11473082, at * 1; *S.N.C.*, 325 F. Supp. 3d at 409. For present purposes, the weight of authority cuts against the petitioner's invitation for this Court to disregard *Padilla*'s default rule for "core" habeas claims.

**Lastly**, the petitioner makes an alternative request for expedited discovery on the venue issue if the Court is not inclined to rule in his favor on the current record. Pet'r Opp. 17-19. The Court should deny that request. As an initial matter, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Toolasprashad v. Tryon*, No. 12 Civ. 734, 2013 WL 1560176, at *2 (W.D.N.Y. April 11, 2013) ("In immigration habeas proceedings under § 2241, a petitioner is not entitled to discovery as a matter of course, . . . unlike the discovery available in most civil litigation."). "[A]bsent a showing of good cause, the decision whether to allow such discovery is left to the discretion of this Court." *Toolasprashad*, 2013 WL 1560176, at *2.

10

In any event, no discovery is warranted here. Acting New York City Field Office Director William Joyce has submitted multiple declarations in this case, under penalty of perjury, to provide the Court with adequate information to resolve this motion. The petitioner asserts that discovery is needed "to further probe the government's incomplete and non-credible accounts of its actions." Pet'r Opp. at 20. But there is nothing incomplete or incredible about the facts provided by ICE, and, as noted above, ICE is presumed to have acted legitimately and in good faith, a presumption that requires clear evidence to overcome it. *See Favish*, 541 U.S. at 174-75.

In short, the petitioner has not offered any compelling reason why discovery is necessary for the Court to decide this motion. The central fact for the venue inquiry is now undisputed: the petitioner was detained in New Jersey when the petition was filed. And even if further background was necessary, the government has already provided it: the government has explained how the petitioner came to be detained in New Jersey and why he was subsequently transferred to Louisiana. *See, e.g.*, 2d Suppl. Joyce Decl. ¶¶ 8-16 (explaining, for example, the shortage of bedspace throughout the Northeast; that the New York City Field Office sent sixteen detainees, including the petitioner, to Louisiana in the same weekend; that the decision to detain the petitioner in Louisiana was made during his initial processing and at least five hours before he filed his habeas petition; and that the petitioner was detained in Elizabeth Detention Facility pending his flight to Louisiana because ICE regulations did not allow him to stay at 26 Federal Plaza).

While the petitioner claims that discovery is needed to fill gaps in the government's story, he fails to articulate what is missing. Moreover, as noted above, since the government's opening brief, the government has provided additional information about the petitioner's detention. *See, e.g.*, 2d Suppl. Joyce Decl. Ultimately, the petitioner's discovery request is not grounded in any identified need, nor does it identify any specific fact or evidence that is essential to his opposition

11

other than his hope of finding some reason to oppose what *Padilla* plainly requires here. His request should be denied.

*   *   *

In sum, venue is not proper in the Southern District of New York for this habeas action. It may be true that there is a great deal of interest in this case, but that does not justify bending the well-settled rules pertaining to habeas jurisdiction. As the Supreme Court cautioned, "it is surely just as necessary in important cases as in unimportant ones that courts take care not to exceed their 'respective jurisdictions' established by Congress." *Padilla*, 542 U.S. at 450-51. For the reasons stated above and set forth in the government's opening brief, the Court should conclude that the Southern District of New York is not the proper forum for this habeas action.

**B.    The Court Should Either Dismiss or Transfer this Action**

Because this Court lacks jurisdiction and is not the proper forum for this habeas action, the Court should either dismiss this action without prejudice or transfer the petition forthwith.

**1.** The petitioner asks the Court to transfer the petition to the District of New Jersey if the Court concludes that it cannot be heard in this District.[8] Pet'r Opp. at 20. But as the government explained in its opening brief, if the Court transfers the petition to the proper forum instead of dismissing it, that forum is the Western District of Louisiana, where the petitioner is currently detained. *See* Gov't Br. at 9-10. As explained, the District of New Jersey never acquired habeas jurisdiction, because the petitioner did not properly file a habeas petition in that district when he was detained there, and so it is not a proper forum. *Id.*

---

[8] The petitioner suggests that the Court should allow him another opportunity to amend his petition, but he offers no intimation of what such an amendment would be. Pet'r Opp. at 20.

The petitioner resists this conclusion, Pet'r Opp. at 20, but he fails to engage in any meaningful legal analysis addressing whether the Western District of Louisiana or the District of New Jersey is the proper forum.  As for New Jersey, he never explains how a district that never had jurisdiction over a case, is not presently the district of confinement, and does not have jurisdiction over the petitioner's physical custodian, could acquire habeas jurisdiction just because the petitioner was detained there temporarily when he filed an improper petition elsewhere.  And as for Louisiana, the petitioner never explains how that district does not follow inescapably from *Padilla*.  There, the Court ordered that the petition be dismissed without prejudice, affording the petitioner the opportunity to refile where he was *presently* being detained.  *Padilla*, 526 U.S. at 451; *see also, e.g.*, *United States v. Means*, 572 F. App'x 793, 794 (11th Cir. 2014) (refiled petition should be filed in district where petitioner "currently incarcerated"); *Magee v. Clinton*, 2005 WL 613248, at *1 (D.C. Cir. 2005) (similar); *United States v. Little*, 392 F.3d 671, 680 (4th Cir. 2004) (similar). "Habeas petitioners, like all other litigants, must follow the basic rules of law and procedure." *S.N.C.*, 325 F. Supp. 3d at 411.  And here, whether by dismissal and refiling, or transfer, those basic rules compel the same straightforward answer: Given that the petitioner's original petition was improper, he must have his new petition heard where he is now being detained.

**2.**  On March 16, 2025, the Court directed the parties to address the applicability of several venue/transfer statutes in considering whether the case should be transferred to the Western District of Louisiana or the District of New Jersey.  *See* Order (ECF No. 63) (directing the parties to address 28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a), and 28 U.S.C. § 1631).  The government believes that those statutes—best read—support transfer to the Western District of Louisiana.

The transfer statutes—§§ 1404(a), 1406(a), and 1631—generally allow district courts to send cases to other courts, where doing so would be more efficient than dismissal (with the option of refiling). But the transfer statutes do not independently vest courts with jurisdiction they would otherwise lack. *Cf. De Ping Wang v. DHS*, 484 F.3d 615, 617-18 (2d Cir. 2007). Put otherwise: Even if a court could have originally heard a given case, if it can no longer do so, the transfer statutes do not broadly give it the ability to resolve a case that it could not otherwise hear.

Applied here, that would resist transfer to the District of New Jersey. The transfer statutes above "all limit transfer to a district where the action could have been brought in the first instance." *Parker v. Hazelwood*, No. 17 Civ. 484 (LM), 2019 WL 4261832, at *6 (D.N.H. 2019). At the time of filing, that would have been the District of New Jersey. But as explained above, it would be improper for a petition to be heard there now—and nothing in the transfer statutes vest that court with the ability to somehow exercise habeas jurisdiction from scratch. That is why, when faced with such a situation—where a petitioner improperly files a petition, but has since been moved to a different location—courts typically dismiss without prejudice. *See, e.g.*, *Pittman v. Pullen*, No. 3:22-cv-01651 (JAM), 2023 WL 6379371, at *3 (D. Conn. Sept. 29, 2023).

That said, one of the transfer statutes—§ 1404(a)—permits transfer to "any district or division to which all parties have consented." In order to facilitate a prompt resolution of this petition, the government consents to transfer to the Western District of Louisiana. Of course, the government does not waive any other jurisdictional defenses—including that habeas relief is simply not available at this time to the petitioner, under the federal immigration laws.[9]

---

[9] As the government has explained elsewhere, whatever the forum, the federal immigration laws nonetheless bar habeas relief here. *See, e.g.*, ECF No. 47 at 5-10.

14

Alternatively, if the Court reads the transfer statutes as permitting transfers to any district to cure a misfiled habeas petition (and not just one where jurisdiction would have been proper at the time of filing), this Court should promptly do so, be it to the District of New Jersey, or to the Western District of Louisiana. *See Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996). While the government does not believe the District of New Jersey is a proper venue—and believes that transferring this case to the Western District of Louisiana is the surest way to obtain a prompt resolution of this petition—what is clear is that this District is improper. Any transfer will thus help move this matter to resolution, as all parties agree is imperative here.

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in the government's opening brief, the Court should either dismiss this action or transfer the petition.

Dated: March 17, 2025

Respectfully submitted,

| | |
|---|---|
| YAAKOV M. ROTH<br>Acting Assistant Attorney General<br>Civil Division | MATTHEW PODOLSKY<br>Acting United States Attorney<br>Southern District of New York<br>*Attorney for Respondents* |

By:   */s/ Brandon M. Waterman*
JEFFREY OESTERICHER
BRANDON M. WATERMAN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2695/2743
jeffrey.oestericher@usdoj.gov
brandon.waterman@usdoj.gov