IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mahmoud KHALIL,<br><br>            *Petitioner*,<br><br>  v.<br><br>Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice,<br><br>            *Respondents*. | No. 25 Civ. 01935<br><br>ORAL ARGUMENT REQUESTED |

**PETITIONER'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL
RESPONDENTS TO RETURN PETITIONER TO THIS DISTRICT**

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
New York Civil Liberties Union
Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
abelsher@nyclu.org

*Pro hac vice application forthcoming

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Sidra Mahfooz*
Brian Hauss
Brett Max Kaufman
Esha Bhandari
Vera Eidelman
Tyler Takemoto*
American Civil Liberties Union
Foundation
125 Broad Street, Floor 18
New York, NY 10004
Tel: (212) 549-2500

*(Additional Counsel on next page)*

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel:: (212)732-8805
Fax: (212) 571-3792
agreer@dratellewis.com

ojadwat@aclu.org

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
bazmy@ccrjustice.org
ssisay@ccrjustice.org
dshamas@ccrjustice.org

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das, ESQ.
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430
alina.das@nyu.edu

*Counsel for Petitioner*

**INTRODUCTION**

This Court can "issue all writs necessary *or appropriate*" in aid of jurisdiction under the All Writs Act, 28 U.S.C. § 1651 (emphasis added). Ordering Respondents to return Petitioner to this District remains appropriate, both to begin to remedy and reverse Respondents' extraordinary and improper actions here, where they spirited Petitioner a thousand miles away, and to facilitate the Court's ongoing exercise of its jurisdiction, including by promoting greater access by Petitioner to the Court, to his legal counsel, and to his expectant wife, all located within or near this District. As demonstrated below, the Court may, pursuant to the All Writs Act and the Court's inherent equitable power, order Petitioner's return to this District. Should the Court grant the relief sought in his separate Motion for Release, ECF 52, and if the Court includes as part of that relief an order that Respondents return him from Louisiana to his home in New York City at government expense, Petitioner recognizes that the relief sought in this Motion may no longer be necessary.

Below, Petitioner addresses the merits of the Court's authority to grant relief, including through facts that further undermine Respondents' claims that this was a routine or orderly transfer to Louisiana and demonstrate the extraordinary lengths Respondents took to spirit him out of this District. Petitioner then addresses Respondents' jurisdictional arguments, which misapprehend the nature of the equitable relief requested—relief that does not turn on any questioning of Respondents' discretionary detention authority. Indeed, the relief requested in this Motion turns on the very same authority this Court already invoked, ECF 9, in enjoining Respondents from deporting Mr. Khalil. Just as there was no jurisdictional bar to that limited and uncontested equitable relief, there is no jurisdictional bar to the invocation of the Court's same power, and under related authority, to return Mr. Khalil to this District.

## ARGUMENT

**I. THIS COURT HAS THE POWER TO TRANSFER MR. KHALIL TO THE DISTRICT AND TRANSFER IS JUSTIFIED UNDER THE CIRCUMSTANCES.**

Respondents argue that even if it does have venue over Petitioner's motion to compel, this Court lacks authority to order the relief the Motion seeks, and that relief is not justified.

First, if any part of Petitioner's "narrative" may have been "uninformed" to any degree, Opp. 12 (ECF 47), that is because, at the time Petitioner filed his motion, Respondents had offered not a shred of information or justification for Petitioner's detention or transfer out of this District. Nor had Petitioner's counsel spoken to their client on a legal call since he was pulled out of his apartment building by government agents on the night of March 8. Petitioner's counsel has now filed an Amended Petition that lays out facts obtained from him through court-ordered privileged videoconferences, as well as a declaration from him in connection with this filing, that provide new details about his ordeal. To the extent Petitioner has a "narrative," it is now captured in the operative pleading, not in his earliest-filed motion. *See* Petr's Opp. to MTD 3–6 (ECF 50) (narrating events from Amended Petition).

Second, without legal argument, Respondents dismiss the All Writs Act ("AWA") and the Court's inherent authority as sources of law that could support an order by the Court to order Mr. Khalil's return to the District. Opp. 10–11. But the AWA was designed for these kinds of "extraordinary" abuses of government authority, Opp. 11 (quoting *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 130 (2d Cir. 2015)). And Respondents do not even dispute that courts' inherent authority allows them to "protect their proceedings." *Id.* (quoting *Degen v. United States*, 517 U.S. 820, 823 (1996)). These powers are broad and flexible.

Third, Respondents downplay the necessity or propriety of relief through Petitioner's motion, suggesting that questions about their interference with Petitioner's filing of his habeas

2

case are "simply unsupported by the facts." Opp. 12. But it is Respondents' account that has, almost every day of this litigation, been called into doubt as facts have emerged. *See, e.g.*, Petitioner's Opp. to MTD 10-12. Respondents' constantly shifting story calls for the Court's intervention by granting Petitioner's motion, and to remedy their ongoing interference with the Court's exercise of its jurisdiction by keeping him detained far away (even if the existence of jurisdiction in a larger sense is not at issue, as Respondents now concede).

Respondents initially explained that Mr. Khalil was sent to the Elizabeth Detention Facility in New Jersey because it had "comprehensive overnight accommodations," including "beds," as opposed to 26 Federal Plaza, which was unsuitable because it is a "Hold Room facility" that lacked "beds." First Joyce Decl. ¶ 10 (ECF 32). But at Elizabeth, Mr. Khalil was never given a bed, nor even a blanket, and he never even changed out of his street clothes or left the waiting room, even as he saw others get processed, change into uniforms, and enter the main area of the facility. Am. Pet. ¶¶ 61–62; Declaration of Mahmoud Khalil ¶¶ 10–14. In his first declaration, Respondent Joyce acknowledged that 26 Federal Plaza is "used for detention of individuals awaiting . . . transfer." First Joyce Decl. ¶ 10. Given a second opportunity to declare facts about the evening of March 8 and morning of March 9, Respondent Joyce now points to an ICE policy that, he claims, limits detention in facilities like 26 Federal Plaza to 12 hours. Second Joyce Decl. ¶¶ 13–14 (ECF 48). But even he acknowledges that this policy is inapplicable in "exceptional circumstances." *Id.* ¶ 13. Surely not even Respondents would maintain that the night in question, and their treatment of Mr. Khalil, were not exceptional. Mr. Khalil was the first lawful permanent resident against which these Respondents have invoked INA § 237(a)(4)(C)(i), and as he was processed at 26 Federal Plaza, someone at the White House was talking to ICE agents in his presence. Am. Pet. ¶ 58.

3

In opposition to this motion, Respondent Joyce offered an entirely new rationale for why Mr. Khalil was moved from Elizabeth to Louisiana: the Elizabeth Detention Facility "was experiencing and continues to experience a bedbug issue that prevented them from accepting detainees as full transfers." Second Joyce Decl. ¶ 11. But Mr. Khalil never heard a word about bedbugs while he was detained at Elizabeth. Khalil Decl. ¶ 17. What's more, an attorney whose organization represents multiple individuals in immigration proceedings at Elizabeth documented intakes from four people who were processed for detention at Elizabeth between March 6 and March 13. Declaration of Laura Rodriguez, ¶ 6. That is consistent with Mr. Khalil's own observations that morning, as he witnessed people being admitted for long-term detention at the facility after being processed in the waiting room where he was held until being transported back through New York City to JFK Airport. Khalil Decl. ¶¶ 13-14, 25.

Fourth, while the Court's intervention has facilitated crucial privileged access to counsel for Mr. Khalil, and that access, along with his remote participation, has enabled his counsel to move forward with an Amended Petition, a bail motion, and a motion for preliminary injunctive relief, intermittent and virtual access to a client in Louisiana cannot substitute for a more regular and natural combination of in-person and virtual access to him even if he were to remain detained but held in or near this District.

Moreover, should the Court contemplate jurisdictional discovery in connection with its adjudication of Respondents' motion to transfer venue, *see* Petitioner's Opp. to MTD 17–19, Petitioner's proximity and availability to counsel and the Court aid the Court in deciding its jurisdiction, and therefore would be "appropriate," in keeping with the AWA. Finally, for many of the same aforementioned reasons, the relief sought in the instant Motion—ordering Mr. Khalil

4

brought back north from Louisiana—would aid the exercise of jurisdiction whether this Court ultimately retains this matter or transfers it instead to the District of New Jersey.

## II. THE COURT HAS JURISDICTION TO CONSIDER PETITIONER'S MOTION.

In enjoining Respondents from deporting Mr. Khalil, *see* Order (ECF 9), the Court implicitly recognized that the relief requested by this motion—issuing all writs necessary in aid of its jurisdiction—does not implicate 8 U.S.C. §§ 1252(a)(2)(B)(ii) and (g). Yet, Respondents contend that the Court lacks jurisdiction to consider Petitioner's Motion because it implicates discretionary decisions regarding places of detention. Opp. 5–10. But just as the Court had jurisdiction to issue that relief, it retains the same authority—independent of any jurisdictional bars—to issue the relief sought here.

### A. Section 1252(a)(2)(B)(ii) Does Not Bar Review or Relief.

Respondents argue that this Court is deprived of jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) to review their "discretionary decisions concerning where to detain" Mr. Khalil pending his removal proceedings. Opp. 5–6 (citing 8 U.S.C. 1231(g)). But Mr. Khalil does not challenge a run-of-the mill decision by ICE to detain him at a particular detention center. Rather, he seeks to preserve the integrity of this Court's jurisdiction and aid its exercise over his pending habeas petition in light of Respondents' extraordinary attempts initially to defeat jurisdiction, including through their retaliatory decision to transfer him to a detention center over a thousand miles away from this Court, his counsel, and his family. Am. Pet. ¶¶ 17, 99. This is not the type of "discretionary decision[]" subject to § 1252(a)(2)(B)(ii). *Kucana v. Holder*, 558 U.S. 233, 247 (2010). And even if Petitioner were directly challenging his transfer, 8 U.S.C. 1231(g) does not trigger the discretionary bar because that provision deals with sites of *detention*, not transfer decisions.

5

It is axiomatic that a "federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz,* 536 U.S. 622, 628 (2002); *see Hyundai Merch. Marine Co. v. United States*, 159 F.R.D. 424, 426 (S.D.N.Y. 1995). *See also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (authority under the AWA) . The Court's exercise of its AWA authority and its own inherent equitable power is predicate to any question about whether it may review actions taken by Respondents. *See* Mem. Op. and Order, *Perez-Parra v. Castro*, No. 24-cv-00912 (D.N.M. Feb. 9, 2025) (ECF 47) (granting injunction under AWA and court's inherent authority as "necessary to achieve the ends of justice entrusted to this Court"). Thus, § 1252(a)(2)(B)(ii) has no application here.

Additionally, the decision to transfer Mr. Khalil to Louisiana from this District was undertaken for extraordinary and improper reasons, in a bid to interfere with this Court's jurisdiction. *See* Petitioner's Opp. to MTD 3–6 (ECF 50). Respondents were aware that Mr. Khalil was represented by counsel, who they spoke with. Am. Pet. ¶¶ 49, 56 (counsel had G-28 on file). His habeas petition was filed in this District shortly after he was taken into custody, and while the online detainee locater still showed him as detained in New York. ECF 2; Am. Pet. ¶ 55. Yet, after shuttling him between New York and New Jersey over the course of the night, Respondents whisked him away to Louisiana. Am. Pet. ¶¶ 56, 62, 63.

Respondents' latest factual submissions do not meaningfully dispute this version of events, nor do they explain why Mr. Khalil could not be detained closer to home. They represent that "many ICE detention facilities throughout the Northeastern United States are *near* or at capacity," Second Joyce Decl. ¶ 9 (emphasis added), effectively conceding that they could have found a single bed for Mr. Khalil nearby, had they only tried. They confirm that Respondents did not even attempt to secure a single bed for Mr. Khalil from ERO Philadelphia or ERO Buffalo based on

6

"awareness" of a "general paucity" of beds. *Id.* ¶¶ 9, 11. They claim that Elizabeth Detention Center was not accepting long-term detainees due to a bed bug infestation, *Id.* ¶ 11, but the facility processed at least four individuals for detention at Elizabeth between March 6 and March 13, 2025. Rodriguez Decl., ¶¶ 6–7. Mr. Khalil himself saw men being processed for detention, to be kept at Elizabeth, during his time in that facility. Khalil Decl., ¶ 13-14. Likewise, Orange Detention Center accepted new detainees during the same time period that Respondent Joyce contends it could not accommodate Mr. Khalil. Declaration of Katherine Kim, ¶¶ 9–10. And Respondents confirm that ERO New York contacted ERO New Orleans soon after Mr. Khalil was brought to 26 Federal Plaza, lending further credence to Petitioner's contention that transfer to Louisiana was predetermined and carried out for improper motives. Second Joyce Decl. ¶ 12.

Transfer for the purpose of interfering with jurisdiction, including by impeding, complicating, or limiting access to the Court and to counsel, is not a discretionary decision. Nor is retaliatory immigration detention. Rather, these actions raise profound questions regarding the legal extent of the government's authority to transfer detainees for these purposes, and "the extent of that authority is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). "After all, no executive official has discretion" to violate the constitution or engage in jurisdictional gamesmanship. *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 191 (3d Cir. 2020) (§ 1252(a)(2)(B)(ii) did not apply where defendants' policy of returning asylum seekers to Mexico was not authorized by law); *see also Ragbir v. Homan*, 923 F.3d 53, 73 (2d Cir. 2019) (lawful permanent resident stated cognizable claim that retaliatory arrest and placement in removal proceedings violated his First Amendment rights).

Finally, even if Mr. Khalil's transfer did not raise grave constitutional concerns and threats to the integrity and smooth functioning of this Court's jurisdiction, § 1252(a)(2)(B)(ii) still would

not preclude review. As the Supreme Court established in *Kucana*, that provision applies only to those decisions where Congress has "set out the Attorney General's discretionary authority in the statute." 558 U.S. at 247. Respondents point to § 1231(g) as supplying the authority to transfer, but that provision merely states that DHS "shall arrange for appropriate places of detention for [noncitizens] detained pending removal or a decision on removal" and "may expend from [enumerated appropriations] amounts necessary to . . . operate facilities . . . necessary for detention." *Id.* § 1231(g)(1). That statute nowhere even mentions or authorizes "transfer." *See id*.

Consequently, "there is considerable uncertainty as to whether § 1231(g)(1) encompasses the authority to transfer detainees." *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 20 (1st Cir. 2007). But even if it *implicitly* authorizes transfers, § 1231(g) certainly does not *specify* that the power to transfer is discretionary, as required under *Kucana*. *See Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209–10 (4th Cir. 2019) (relying on *Kucana* to hold that § 1252(a)(2)(B)(ii) does not bar review of transfer decisions); *Aguilar*, 510 F.3d at 20 (reaching same conclusion pre-*Kucana*, noting "stark contrast" between § 1231(g) and other INA provisions that clearly specify a particular authority as discretionary); *see also Fogo De Chao (Holdings) Inc. v. DHS*, 769 F.3d 1127, 1138 (D.C. Cir. 2014) (§ 1252(a)(2)(B)(ii) "speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion," and "'[s]pecified' is not synonymous with 'implied' or 'anticipated'" (quoting *Kucana*, 558 U.S. at 243 n.10)).[1]\

---

[1] Defendants' cases do not support a contrary result. *Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, did not address jurisdiction, let alone § 1252(a)(2)(B)(ii). 44 F.3d 1251 (4th Cir. 1995). *Wood v. United States* assumed jurisdiction and rejected plaintiffs' claim on the merits. 175 F. App'x 419, 420 (2d Cir. 2006); *see also Edison C. F. v. Decker*, 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) ("This Court need not reach the ultimate question of jurisdiction here[.]"). *Van Dinh v. Reno* predates *Kucana*, and its failure to identify any discretion specified by statute is flatly inconsistent with the Supreme Court's holding. 197 F.3d 427 (10th Cir. 1999).

## B. Section 1252(g) Does Not Bar Review or Relief.

Respondents' arguments as to § 1252(g) likewise fail. § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'" and should be construed narrowly. *Reno v. Am.-Arab Anti-Discrim. Comm. (AADC)*, 525 U.S. 471, 482 (1999); *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (§ 1252(g) did not cover agency's rescission of DACA, even though policy provided for deferral of removal for beneficiaries); *Jama v. I.N.S.*, 329 F.3d 630, 632 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005) (concluding that petitioner's "question is simply outside the scope of the jurisdiction-stripping provision of § 1252(g)" where the court is "address[ing] a purely legal question of statutory construction" regarding whether removal was to a statutorily authorized country under § 1231). While "[t]here are of course many other decisions or actions that may be part of the deportation process"—like the determination of where a proceeding occurs—"[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id*.

Respondents argue the commencement of proceedings necessarily includes *where* a proceeding is held, but provide no authority to support is sweepingly broad reading of the statute. Opp. 8–9. Instead, they only reference cases involving the decision of *whether* and *when* to commence proceedings. *See Id*. (discussing *Arostegui v. Holder*, 368 F. Appx 169, 171 (2d Cir. 2010) ("whether and when" to commence proceeding); *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (similar); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (similar)). But, such deliberations are starkly different than the overreaching determination of *where* a proceeding is ultimately located – a determination that is necessarily tied to a court's jurisdiction, the residence of the noncitizen, and several other factors that go beyond prosecutorial discretion to restrict the

9

government's ability to transfer proceedings to a forum that is convenient or more favorable to them. These are exactly the type of considerations that fall outside the limited scope of the three discrete actions specified in 1252(g). *AADC,* 525 U.S. at 482. This is especially true in cases, such as this one, where Respondents have taken a series of calculated steps in an effort to interfere with this Court's jurisdiction. *See supra* Section I.

Furthermore, Section 1252(g) applies only to "discretionary determinations," *AADC*, 525 U.S. at 485, and does not reach claims such as this one where Petitioner seeks relief under the Court's inherent equitable authority against an agency's extraordinary efforts to manipulate jurisdiction. *See Klay*, 376 F.3d at 1102. Respondents have no discretion to undertake such actions. *See, e.g.*, *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (§ 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"); *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) (challenge to "very authority" behind decision to commence proceedings does "not implicate[]" § 1252(g)); *Arce v. U.S.*, 899 F.3d 796, 801 (9th Cir. 2019) (similar).

For similar reasons, because the decision of where to hold proceedings is by nature different from discretionary, prosecutorial decisions, the government's cases about channeling claims into the petition for review do not apply here. *See AADC*, 525 U.S. at 483; Opp. 9-10. And finally, Respondent highlight the language in § 1252(g) referencing the AWA. But they neglect the operative text which determines the scope of jurisdiction. Mere reference of the AWA in this context does nothing to change the fact that the relief Petitioners seek in this case is outside the three discrete actions to "commence proceedings, adjudicate cases, or execute removal orders and relates to nondiscretionary considerations of legal questions. *Id*. Habeas is also specifically included in 1252(g), but that does not mean the provision does away with habeas corpus. *See e,g,,*

10

*D.A.M. v. Barr*, 474 F. Supp. 3d 45, 60 (D.D.C. 2020). In sum, nothing in § 1252(g) precludes this Court's review or relief sought in the instant Motion.

## CONCLUSION

Petitioner respectfully requests that the Court issue an order under the All Writs Act and/or the Court's inherent equitable authority to reverse Petitioner's transfer and return him to New York and to the status quo at the commencement of this litigation.

Dated: March 17, 2025

/s/ *Ramzi Kassem*

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
abelsher@nyclu.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Omar Jadwat
Noor Zafar
Sidra Mahfooz*
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto*
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
Tel: (212) 549-2500
ojadwat@aclu.org

*Application for admission* pro hac vice *forthcoming*

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
bazmy@ccrjustice.org
ssisay@ccrjustice.org
dshamas@ccrjustice.org

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das, ESQ.
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

alina.das@nyu.edu

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel:: (212)732-8805
agreer@dratellewis.com

*Counsel for Petitioner*